## Respublica *against* Alexander James Dallas, esquire.

The court in a doubtful case, on a rule to shew cause why an information in the nature of a *quo warranto* should not be filed, will not determine whether an appointment to office by the governor, be constitutional or not. The offices of city recorder, or justices of the peace, are not constitutionally incompatible with offices of trust or profit under the United States.

A MOTION was máde at the last September term, for a rule on Mr. Dallas, to shew cause, why an information in the nature of a *quo warranto*, should not be filed against him, for exercising the office of recorder of the city of Philadelphia, while he held the office of district attorney for the eastern district of Pennsylvania, under the United States; at the relation of the select and common councils of the said city.

The counsel on both sides, upon the argument on the motion, went fully into the merits of the question, whether the two offices were compatible or incompatible, under the constitution of this state. And after the argument had progressed a considerble length, the counsel for the relators insisted, that all the court had to look to, before they granted the information, was to see that a fair doubt was raised. 3 Term Rep. 598, 9. An information in the nature of a *quo warranto* was granted, where the right depended on a matter of doubtful law, in order to its being finally determined. Cowp. 58. If there is a doubt of the right of a corporation, the court will grant the rule. 2 Kyd. Corpor. 432.

The defendant's counsel did not controvert the authority of the cases cited. The peace and good government of the city, was immediately interested in an early decision of the question. They offered to agree to any terms which would accelerate the determination.

The court said, the case was of considerable magnitude, and the pleadings should be filed in such a manner, as to put the whole on record, in order that either side, if dissatisfied with the *decision here, might bring a writ of error. The great question could not with propriety be decided, on the rule to shew cause. Doug. 382, (397.)

The following pleadings were then filed by consent.

County of Philadelphia, ss.                    September term 1801.

Be it remembered, that Joseph Hopkinson, esq. cometh here into the Supreme Court of the commonwealth of Pennsylvania, and for the said commonwealth, at the relation of the select and common councils of the city of Philadelphia, giveth the court here to understand and be informed, that the city of Philadelphia is a corporation, and that the citizens of the said city now are, and for the space of two years last past and upwards, have

[Respublica *v.* Dallas.]

been, and were one body, corporate and politic in deed, fact and name, by the name of the mayor, aldermen and citizens of Philadelphia; and that within the said city there is or ought to be, and for and during all the time aforesaid, there hath been, or ought to have been a recorder of the said city, to wit, at the city aforesaid, in the county of Philadelphia; and that the office of recorder of the said city, for and during all the time aforesaid, hath been, and still is, a public office, and an office of great trust and pre-eminence within the said city, touching the rule and government of the said city, and the administration of public justice, within the said city; and that Alexander James Dallas, esq., late of the city aforesaid, on the first day of September, in the year of our Lord 1801, did use and exercise, and from thence continually afterwards, to the time of exhibiting this information, hath there usurped and exercised, and still doth there use and exercise, without any lawful warrant, grant or right whatsoever, the office of recorder of the said city, and for and during all the time aforesaid, hath there claimed, and still doth there claim, without any lawful warrant, grant or right whatsoever, to be recorder of the said city, and to have, use and enjoy all the liberties, privileges, jurisdictions, powers and authorities to the said office of recorder, belonging and appertaining; which said office, liberties, privileges, jurisdictions, powers and authorities, he the said Alexander James Dallas, esq., for and during all the time aforesaid, upon the said commonwealth hath usurped, and still doth usurp, in contempt of the said commonwealth, and the laws thereof, and to the great damage of the said commonwealth. Whereupon, the said Joseph Hopkinson prayeth the consideration of the court here in the premises, and that due process of law may be awarded against him, the said Alexander, in this behalf, to make him answer to the said commonwealth, and shew by what warrant *he claims, to have, use and enjoy the office, liberties, privileges, jurisdictions, authorities and [*302 powers aforesaid. Joseph Hopkinson.

And the said Alexander James Dallas, by Joseph B. M'Kean his attorney, comes and saith in answer to the information above stated and filed, that he was duly commissioned and appointed recorder of the said city of Philadelphia, by the governor of the commonwealth, as appears by a commission to the court here shewn, bearing date the          day of          1801, signed by the governor of the commonwealth, and sealed with the seal thereof, and now in full force; and the said Alexander James Dallas saith, that by virtue and warrant of the said appointment and commission, he claims to have, use and enjoy, during the time in the above information mentioned, the office of recorder of the said city of Philadelphia, together with all the privileges, powers and jurisdictions thereof, and thereto appertaining.

J. B. M'Kean attorney for A. J. Dallas.

And the said Joseph Hopkinson in replication to the foregoing

[Respublica *v.* Dallas.]

plea, comes and saith, that the said Alexander James Dallas, esq., in the foregoing information filed, holds and exercises, and for and during all the time mentioned in the said information, did hold and exercise an office of trust and profit under the United States, to wit, the office of district attorney for the eastern district of Pennsylvania ; and that by the constitution of the commonwealth of Pennsylvania, it is declared, that no person holding or exercising any office of trust or profits of the United States, shall at the same time, hold or exercise the office of judge, secretary, treasurer, prothonotary, register of wills, recorder of deeds thereof, or any office in this state, to which a salary is by law annexed, or any other office, which future legislatures shall declare incompatible with offices or appointments under the United States.                                    Joseph Hopkinson.

And the said Alexander James Dallas saith, that he the said Alexander James Dallas doth not hold the office of judge, secretary, treasurer, prothonotary, register of wills, recorder of deeds, nor any office in this state, to which a salary is by law annexed, nor any other office which the legislature has declared incompatible with offices or appointments under the United States, within the words, intent and meaning of the constitution of Pennsylvania.                                    J. B. M'Kean.

And the said Joseph Hopkinson saith, that the said Alexander *James Dallas doth hold the office of a judge ; to wit, the office of recorder of the said city of Philadelphia, and that he doth hold an office within this state, to which a salary is by law annexed.                                    Joseph Hopkinson.

*303]

To which there was a demurrer and joinder in demurrer ; and an agreement signed by the counsel, that the pleadings should be drawn into form, in case of a writ of error.

The case was argued at the last term by Messrs. Lewis, E. Tilghman and Hopkinson on the part of the relators, and by Messrs. Ingersoll and M'Kean on the part of the defendant.

Arguments for the relators. It is a matter of perfect notoriety, when the new constitution of this state was formed on the 2d September 1790, that great jealousies were entertained of the general government of the United States. The constitution agreed to by the convention of the United States of America, on the 17th September 1787, was assented to and ratified by the convention of Pennsylvania on the 12th December following. Many persons affected to fear a consolidation of the state governments, and dreaded lest the power of the union should overshadow the independent sovereignty of the several states. To prevent these evils, the new constitution carefully guarded against an union of offices, and to form a just construction of it, our minds must be carried back to the period wherein it was framed, and embrace in one extended view, the fears as

[Respublica *v.* Dallas.]

well as hopes of the contending parties, in this important question then agitated.

The present dispute turns on the 8th section of the 2d article of the state constitution. Speaking of the governor's power of appointment to office, these words are used : "No member of "congress from this state, nor any person holding or exercising "any office of trust or profit, under the United States, shall, at "the same time, hold or exercise the office of judge, secretary, "treasurer, prothonotary, register of wills, recorder of deeds, "sheriff, or any office in this state to which a salary is by law "annexed, or any other office, which future legislatures shall "declare incompatible with offices or appointments under the "United States." 3 St. Laws XXVII.

The 1st section of the 5th article of the same constitution, fixes "the judicial power of this commonwealth, as vested in a "Supreme Court, in Courts of Oyer and Terminer and Gene- "ral Gaol Delivery, in a Court of Common Pleas, Orphans' "Court, Register's Court, and a Court of Quarter Sessions of "*the Peace for each county, in Justices of the Peace, [*304 "and in such other courts as the legislature may, from "time to time, establish."

An act "to incorporate the city of Philadelphia," passed on the 11th March 1789. 2 St. Laws 654. By § 14, the mayor and aldermen, or a majority of them, were impowered to elect a recorder, who was thereby vested with all the powers and jurisdictions of a justice of the peace within the city, for the term of seven years. By § 19, the mayor, recorder and aldermen of the said city, were severally and respectively declared, to have all the jurisdictions, powers and authorities of justices of the peace, and justices of Oyer and Terminer and Gaol Delivery for the said city. And by § 22, it was enacted, that the mayor or recorder might issue his writs of *capias* into any other county, to take the body of any person indicted or outlawed, &c.

This charter of incorporation was afterwards altered, "to "render it more similar to the frame of government of this "commonwealth," on the 4th April 1796. 4 St. Laws 75. By § 4, the governor is impowered to appoint one recorder and fifteen aldermen for the said city, who shall hold their offices during good behaviour, with the powers and privileges before annexed to their several offices, legislative powers only excepted.

Thus it appears that the city recorder is a justice of the peace of Oyer and Terminer and of General Gaol Delivery, and that his power spreads over the whole penal code. If his continuance in office was once limited to seven years, so were the judges of this court, under the old constitution. He is now placed on the same footing with them, *quamdiu se bene gesserit.* If it be objected that he receives criminal and not civil jurisdiction, we ask, where does the constitution draw this line, in defining the character of a judge ? and moreover, if powers of a criminal nature are essential features in the character of a judge, do the

justices of the Court of Common Pleas in England, lose that appellation?

If the argument, *proper excellentiam*, is argued, to shew that the office of recorder of the city is not within the meaning of the constitution, we assert, that to suppose the station of recorder of a populous city less dignified than that of an associate justice of the Common Pleas in this state, would be ludicrous indeed! We admit, that where a suit is directed by a British statute to be brought in a court of record, it must be in the king's courts at Westminster, because inferior courts have not power to grant *essoin*, protection or wager of law, and so is Cro. Car. 146. But suppose an offence created by law in this state, and it should *be committed in the city, would not the Mayor's Court have jurisdiction of it, as a court of record?

*305]

The word judge has the same import, whether taken in its vulgar or legal sense. Thus in holy scripture: The Lord shall judge his people. Deutr. c. 32, v. 36. God is judge himself. Psalms ·c. 50, v. 6. To God the judge of all. Hebr. c. 12, v. 23, &c.

A judge is a person who is invested with an authority to determine any cause or question, real or personal. 2 Cunn. Dict. And several instances are cited, wherein it is synonymous with the term justice. So under the word justice, the character of different judges is included. Judge is a chief magistrate in the law, to try civil and criminal causes, and punish offences. Jacob's Law Dict. Nothing is more to be avoided in a free constitution, than uniting the provinces of a judge and a minister of state. 1 Bla. Com. 269. The process out of the Court of Common Pleas is returnable before our justices at Westminster. 2 Bla. Com. Append. III. The judges of this court are four in number, one chief and three puisne justices. Ib. 40. Speaking of the King's Bench, the terms judges and justices are used indiscriminately. Ib. 41. 4 Inst. 73. If a man slay the chancellor, treasurer, or the king's justices of the one bench, or the other, &c. 4 Bl. Com. 84. Assaulting a judge is made punishable, &c. Ib. 125. If a judge of the Court of Common Pleas is made a judge of the Court of King's Bench, &c. 5 Bac. Abr. 557.

Moreover, it will appear by the language of our own laws and constitutions, that the words, judges and justices, are used promiscuously. Thus, in the act of 22d May 1722, for establishing courts of judicature in this province, (Galloway's edit. 114. Miller's edit. 84,) there shall be three judges of the Supreme Court commissioned, one of whom shall be distinguished as chief justice; and every of the said justices shall have power to issue process returnable to the said court, and grantable by the said judges, &c. § 11. The judges shall go the circuit, and generally do all things as fully as justices of Nisi Prius in England, may or can do, § 12. The said judges shall minister justice, &c. as fully as the justices of the Court of King's Bench, Common Pleas and Exchequer at Westminster, or any of them, may or

can do, § 13.   The writs shall be tested in the name of the chief justice, or one of the other justices, § 16.   The members of the county courts of Common Pleas are styled justices, § 21.

We find in the old state constitution of September 28th 1776, these words in § 20.   The president, with the council, shall have power to appoint and commissionate judges, naval officers, *judges of the admiralty, &c.   They shall sit as judges, [*306 to hear and determine on impeachments, taking to their assistance, for advice only, the justices of the Supreme Court. 1 St. Laws, Append. 58.

Under the present state constitution, the judges of the Supreme Court shall be justices of Oyer and Terminer and General Gaol Delivery in the several counties. Art. 5, § 3.   The president of the Courts of Common Pleas in each Circuit, and the judges of such court, shall be justices of the peace, so far as relates to criminal matters. Art. 5, § 9.

By the act of 13th April 1791, § 15, it is directed, that no judges of any court of record mentioned in this act, shall practise as an attorney or counsellor, in any court of· justice in this commonwealth, or elsewhere.   The wording of this clause was expressly intended to exclude the recorder of the city from this general provision, and must be regarded as a strong legislative exposition, that under the constitution he was considered as a judge.

It has been alleged, that the judge intended to be excluded by the constitution, from holding an office under the general government, was such only as did not receive fees in the ordinary discharge of his duties.

The recorder is the great law officer of the corporation, and receives a salary of 500 dollars yearly, under an ordinance of the city, and only receives fees for ministerial acts, when he affixes the city seal to the mayor's certificates.   The position is not correct, that a judge by the constitution could not take fees.   The exclusion from fees or perquisites of office, is confined by the 2d section of the 5th article, to the judges of the Supreme Court, and the presidents of the Courts of Common Pleas, and would not comprehend the associate justices of the latter court; and it might as well be contended, that the three persons, who were to be associated with the judges of the Supreme Court, and the presidents of the Court of Common Pleas, as judges of the High Court of Errors and Appeals, might well hold an office of the first trust under the United States, if they had not been entitled to the sum of six dollars for each day's attendance in court, under the 21st section of the law of 13th April 1791.

But it will be urged, that the recorder is a mere corporation officer, originally elected by the mayor and aldermen, and that the disqualification insisted on, would operate too far on corporate bodies.   To this it is answered, that the words of the constitution are, judge, &c., or any office *in* this state, not *of* the state; that the recorder receives his appointment from the gov-

ernor, and is therefore as much a state officer as a prothonotary, *whose duties are bounded by the limits of his county; *307] and that the exception only goes to judges sitting in court to determine controversies, and persons having fixed salaries. Though the recorder, under the incorporating act of 1789, was not appointed by the Executive Council, nor chosen immediately by the people, yet he was a state officer mediately chosen by the people. He would have been liable to impeachment for misbehaviour in office, under the old constitution, though the same was not specially provided for therein. The objection that the recorder should have been originally appointed by the Supreme Executive Council, only proves that there has been no regular constitutional appointment of a recorder for the city, until the law of 1796.

The cases from the English books do not apply to the office of a recorder here. The recorder of London may have a deputy. Kyd. Corpor. 426. But this will not be pretended to amongst us. It is admitted, that the office might be so constituted, that one might sustain the character of a recorder without exercising the functions of a justice of the peace ; and that if his power of judging was taken away, his disqualification would cease. The question now is, as to his exclusion, under the power he now possesses.

In Nicholls *v.* Johns, 1 Dall. 184, the clerk of the Mayor's Court was said by the present governor, when Chief Justice, to be a public officer, concerned in the administration of justice, and to resemble in all respects the prothonotary of the Supreme Court. Ib. 189 (note.) It was admitted, that if he had been appointed or chosen by the corporation, he would not be a state officer. Now, if the recorder is at least as much concerned in the administration of justice, and possesses a superior grade of office under the governor's appointment, he must surely be a state officer also.

It will appear by a reference to the minutes of the convention of 10th February 1790, (pa. 82, 83) that the then Chief Justice, with a few others, wished to restrict the disqualification to the judges of the Supreme Court, or other court of general jurisdiction, and the presidents of the Court of Common Pleas ; but the motion failed by a great majority. From the same minutes (pa. 129) it also appears, that on the 24th February 1790, the committee appointed to revise and correct the report of the committee of the whole, made a report, including persons in the commission of the peace, from the disqualification ; but it was rejected the next day by a majority of 44 against 15, and the 8th section of the 2d article was carried as we now find it, (pa. 138.)

*308] [*Mr. Lewis stated, that he had moved in convention to strike out the word, judge, in the article now under consideration, and in lieu thereof, to insert the words, justices of any court. (Min. Convent. 139.) This was not done to increase the disqualifications, to which in a variety of instances

[Respublica *v.* Dallas.]

he was strongly opposed ; but he was of opinion, that the term, justice, had a more precise and appropriate meaning than judge, and signified one sitting in court to decide on matters either of a criminal or civil nature.]

On the 21st August 1790, a committee was appointed to revise, correct, and arrange so much of the constitution as had been adopted, (Min. Convent. 176) who made a report in part on the 30th of the same month ; (Ib. 195) and all further discussion was closed on the next day ; (Ib. 205) but on the 28th August, Mr. M'Lene moved, that corporation officers should be excepted in the disqualification clause, but it was determined in the negative. (Ib. 194.)

It may be further objected; that there are cases wherein persons have sustained commissions as well under this state as the United States, at the same time ; such as Francis Hopkinson, Matthew Clarkson, and others. To this it is answered, that those instances passed *sub silentio,* and were not disputed. But in the case of Mr. Robert Wharton, the late mayor of the city, who was commissioned as captain of a troop of light horse, the opinion of Mr. Ingersoll, then attorney general, was taken on the compatibility of the two offices, and relying on that opinion, he resigned his military command with great regret.

Upon the whole, the court will consider what is the true construction of the constitution on the point submitted to their decision. Technical rules, which might exist in the construction of a deed or a will, do not apply here. The question solely is, what did the framers of this memorable instrument mean when they used the word, judge ? Does it apply to the present office ? If it does not, it must be solely on the ground that no civil jurisdiction is annexed to it. But it is well known, that the judges of the Court of King's Bench had only criminal jurisdiction originally. The civil branch ensued on a mere fiction. That jealousies of the general government existed, there can be no doubt ; they were deeply rooted in the minds of the members of the convention. They have provided in the 22d section of the 9th article of the constitution, that no standing army shall, in time of peace, be kept up without the consent of the legislature ; and the military shall in all cases, and at all times, be in strict subordination to the civil power. Did a plain simple farmer, in *the character of a secretary, treasurer, prothonotary, register of wills, recorder of deeds, or sheriff, excite their [*309 strongest fears, and were they perfectly tranquil at the influence necessarily consequent on the important office of recorder of an opulent, commercial city ? Had they forgot, that royal influence extends itself more readily into corporations, than any other part of the body politic ? And did they conceive, that the office being stripped of civil jurisdiction, exempted the citizens from all danger whatever ?

Let it not be said, that if there is an incompatibility of office,

[Respublica *v.* Dallas.]

the acceptance of the last office vacates the first though superior office. If they are incompatible, the state constitution creates an incapacity, and the court is bound so to declare it. But the national constitution has no disqualifying clause; and the courts of the United States cannot in such a case, interpose their authority.

The argument on the part of the defendant was divided into four heads. 1st. Does the 8th section of the 2d article of the constitution, include state officers only? 2d. Is the recorder of the city a state officer? 3d. Is the word judge, in the constitution, to be taken in the sense contended for by the relators? And 4th. If no definitive opinion is given hereon, what will be the consequences to the community?

1. It is not denied, that jealousies prevailed against the national government, when the state constitution was formed. To a certain extent, and confined within due bounds, such sentiments conduced to the preservation of liberty; but overweening repulsive passions have the worst effect in society, by representing every public measure in a false light. The state governments should support each other, and be severally supported by the union at large.

The bare reading of the 8th section of the 2d article, will satisfy any reasonable mind, that none but state officers are comprehended therein. The object of the section was to define the power of the governor, as to the appointment of officers of the state; and cannot be extended to corporation officers, then eligible by themselves, to the duties whereof a salary was annexed, not by law, but by a city ordinance. Under a different construction, the treasurer and clerks of the corporation would be disqualified from holding an office of trust or profit under the United States, which will scarcely be insisted on. The clause relates to the state secretary and treasurer only. Either all or none of the corporation officers are excluded.

2. The 3d section of the 7th article of the present constitution, provides, that the rights, privileges, immunities and estate of corporate bodies shall remain, as if the constitution had not been \*altered or amended. Consequently, the city having been \*310] previously incorporated, the old constitution of 1776, must determine whether the recorder was a state officer or not. By the 20th section of the plan or frame of government, the executive council had power to appoint and commissionate judges, &c., and all other officers, civil and military, except such as are chosen by the general assembly or the people. A state officer must necessarily have been appointed or chosen in one of these modes; and if corporation officers are considered as state officers, it must follow, that the incorporating act of 1789, would violate the constitution. The minutes of the council of censors are replete with proofs on this head. (pa. 140, 141.) The law of the 4th April 1785, (Loose Acts, pa. 546,) was passed in conformity to the

opinion of the censors, and declared, that the nomination and
appointment of all officers necessary to the execution of the laws
of this commonwealth, except those specially reserved to the
general assembly or people, should be made by the executive
council.    And hence, the laws giving the authority of justice of
the peace to the chief burgess of the borough of Lancaster, and
to the burgesses of the boroughs of Carlisle and Reading, were
declared to be so far contrary to the constitution, by an act
passed 13th September 1785.  (Ib. 634.)

If the city recorder had been a state officer, he would imme-
diately have become a justice of the Court of Common Pleas.
The difficulty on this score is obviated by considering him a
mere corporation officer.

Under the 9th section of the constitution of 1776, the mem-
bers of the house of representatives had power to grant charters
of incorporation.    The exercise of corporation rights is under
the controul of the state courts ; and little danger can be appre-
hended from them.    The Supreme Court hath all the authority
of the Court of King's Bench on this head.

Again.  By the 40th section of the old constitution, every offi-
cer whether judicial, executive or military, in authority under
this commonwealth, were directed to take certain oaths.    The
test laws were repealed a few days after the act of incorporation ;
but the oath of the corporation officers differed from that pre-
scribed by the above section.    The office of recorder must con-
tinue as to the point in question, in the same state, as when it
was first created.    At that time it was considered not as a state,
but as a mere corporation office, and there was no distinction
between it and any other subordinate office of the corporate
body.    The recorder was neither appointed under the common-
wealth, nor took the oath prescribed by the constitution ; and
therefore on the 2d September 1790, when the new constitution
*was agreed to, he might well hold that office and another
under the United States.    [*311

The law of the 4th April 1796, was passed on the " prayer of
" many of the citizens of Philadelphia, for such alterations in
" their charter of incorporation, as might render it more similar
" to the frame of government of this commonwealth," but nei-
ther professed to make, nor did it make the recorder a state
officer.    It assimilated the police of the city to that of the state,
but though the citizens wished the appointment of the recorder
to be by the governor, it did not create him a state officer, ap-
pointed under the constitution.    The law left him in this par-
ticular as it found him.    The legislature cannot constitutionally
appoint judges and justices, but it may superadd jurisdiction
and powers to constitutional appointments.

The case of Johns v. Nicholls, cited by the relators, is not ap-
plicable.    The city corporation were not authorized to elect the
clerk of the city court ; but the mayor and aldermen had the ex-
press power of choosing their recorder.

[Respublica *v.* Dallas.]

It is moreover asked, upon what grounds, did the incorpora-
tion act of 1789, in the proviso in the 14th section enact, that
the recorder elected, might be impeached for misdemeanor in
office, before the council, when the 22d section of the old con-
stitution had made the same provision, as to every officer of the
state, whether judicial or executive? Is not this likewise, a
legislative exposition, that the recorder was not considered a
state officer?

3d. It has been already remarked, that the recorder's office
has no salary annexed to it by law, but the compensation for the
services, is fixed by a city ordinance. But this disqualification
has not been pressed during the argument. It remains then to
examine, whether the defendant can be deemed a judge, within
the true meaning of the constitution.

In England, a recorder is the mouth of the corporation, and
a justice of the peace. (Priv. Lond. 16.) That of London, in-
cludes Southwark. (Ib. 23.) He is the principal assistant of the
mayor, &c. to administer justice. (Ib. 63.) He is also a justice
of Oyer and Terminer. (Ib. 64.) One may be recorder, without
being a justice of the peace. Giving a wrong opinion, is no
breach of his corporate duty. 2 Kyd. Corpor. 80. It is his
principal duty to advise the corporation, in matters of law. Ib.
82. In London he may have a deputy. Kyd. Corpor. 426. The
customs of London, shall be tried by the certificate of the mayor
and aldermen, certified by the mouth of their recorder. Co. Lit.
74. Cro. Car. 516. 1 Bl. Com. 76.

The word *judge*, in our constitution, must be taken in a fixed
legislative sense. It is used without any addition, and
only refers to the judges of the Supreme Court and Com-
mon Pleas. Judges may sometimes be styled justices in the
books, but we believe no passage can be shewn in any correct
writer, wherein justices of the peace have been called judges,
either in the technical or vulgar meaning of the word. Under
the words of the statute of 4 and 5 Phil. and Mar. c. 5, Courts
of record, the four courts at Westminster only are intended. 6
Co. 20. The forgery of a false deed on stat. 5 El. c. 14, cannot
be prosecuted in an inferior court. 9 Co. 118. On the statute
of 21 H. 8, c. 13, concerning non-residence, the prosecution can-
not be in an inferior court. Cro. Car. 146. Nor even at the as-
sizes. 2 Stra. 1103. Hut. 101. W. Jo. 198. The words "any of
"the king's courts" in that statute will not include the sessions.
1 Burr. 543, 545.

By the statute of 12 and 13 Will. 3, c. 2, § 3, no person hav-
ing a pension from the crown, or holding any office of profit,
shall sit in the house of commons; and by stat. 1 Geo. 3, c. 23,
the commissions of the judges were to remain in full force, not-
withstanding the demise of the crown. The twelve judges only
held commissions during good behaviour. The recorder of
London or any other city would not be included in either of
those acts. A justice of the peace is not within the statute of

25 Ed. 3, c. 2, notwithstanding the general words in his com-. mission. 1 H. H. P. C. 231. 9 Co. 118, b. Cro. El. 87, 697.

By adverting to each section of the 5th article of the constitution, touching the judicial power of this commonwealth, it will be seen that the word *judge* is used, as applicable only to the Supreme Court, and courts of Common Pleas. *Vide* §§ 2, 3, 5, 7, 8, 9. And the law of 13th April 1791, pursues the same language throughout. 3 St. Laws 92. But if the recorder of the city was strictly and properly a constitutional state judge, he could not practice as a counsel or attorney, nor take fees. He now takes bench fees, which is not done by another judge of the state courts.

In the large undefined acceptation of the term *judge* as insisted on by our adversaries, the constitutional exclusion would operate against commissioners of bankrupt, who have a power to commit, referees, who have the like power,—and against the members of the Board of Property, as well as many others, who exercise authority of a judicial nature. The fear of national influence has seized some people, though its sphere is not enlarged. Francis Hopkinson was at the same time an alderman of the city, and judge of the Admiralty. Matthew Clarkson was mayor and a commissioner under the Spanish treaty. Michael *Leib was a justice of the peace and member of congress. [*313 Jacob Graeff was likewise a justice, and a collector of excise ; and James Ash was an alderman and collector of the stamp duties. [Mr. Ingersoll said, that he had been consulted, when attorney general, in the case of Ash, and thought the two offices, which he held, were compatible, as he did not hold the collectorship immediately under the United States' government ; but in the instances of Jonathan Williams (commissioned as a colonel of artillery) and Robert Wharton, (commissioned as a captain in the cavalry) his opinion was, that the several offices, which they held respectively, were incompatible.]

Reference had been made by the relators, to the minutes of the convention, which had framed the new constitution. They would also refer to them. The draught of the constitution first proposed, was reported by the committee, on the 21st December 1789, (pa. 39) in which there was no clause of exclusion.

On the 5th February 1790, the chairman of the committee of the whole, reported their plan of government, wherein the exclusion was very broad, in the 8th section of the 2d article, (pa. 63) and runs thus : "no member of congress from this state, "nor any person holding or exercising any office of trust or "profit under the United States, shall, at the same time, hold "and exercise any office whatever, otherwise than in the militia "in this state."

Amendments were moved for on the 9th and 10th February 1790, (pa. 80, &c.) and the 8th section adopted, (pa. 85.)

On the 24th February 1790, the committee appointed to revise and correct the report of the committee of the whole, made

[Respublica *v*. Dallas.]

their report, (pa. 126.)   Amendments of this 8th section were moved for the next day, and amongst others, Mr. Lewis moved to strike out the word judge, and in lieu thereof, to insert the words, justices of any court, which was determined in the negative, and the 8th section adopted, (pa. 139.)   The refusal of this amendment shews strongly the sense of the convention, that they understood the word *judge* in the sense we now contend for; and another amendment moved for, as to the exception of corporation officers on the 28th August 1790, (pa. 194) evinces, that they were not considered as state officers.

4. Lastly, if the two offices of recorder of the city and district attorney are incompatible under the terms of the constitution, the necessary result will be, that the latter office is avoided thereby.   It is now settled, that where two offices are incompatible, the acceptance of the last, though an inferior office will vacate the first. Milward *v*. Thatcher, 2 Term Rep. 81, 87.   Even this court enforces the laws of the United States, and yet none of its *members hold any office of trust under the union. The author of the Federalist, instead of feeling the dread of the increase of the sphere of national influence, which our antagonists have experienced, has expressed strong fears, that the state governments would in the event, be too great and pow erful for the general government of the United States.

*314]

*Curia advisare vult.*

This term, SHIPPEN C. J. pronounced the unanimous opinion of the court.

The question is, whether the defendant can legally hold the office of the recorder of the city of Philadelphia, at the same time that he holds the office of district attorney for the eastern district of Pennsylvania, under the United States?

The words of the 8th section of the 2d article of the constitution are these : " No member of congress, from this state, nor " any person holding or exercising any office of trust or profit " under the United States, shall, at the same time, hold or ex- " ercise the office of judge, secretary, treasurer, prothonotary, " register of wills, recorder of deeds, sheriff, or any office in " this state, to which a salary is by law annexed, or any other " office, which future legislatures shall declare incompatible with " the offices or appointments under the United States."

It is conceded by the pleadings, that Mr. Dallas holds and exercises an office of trust and profit under the United States.

The question then is, whether the office of recorder of the city of Philadelphia is an office prohibited by the constitution to be exercised by one holding such an office under the United States.

The affirmative of this question is held by the counsel on the part of the relators, who contended, that the recorder of the city is a judge within the words and meaning of the framers of the constitution,

[Respublica v. Dallas.]

The motion was opposed, chiefly on two grounds; 1st, that the office of recorder is not strictly that of a judge, but of an adviser and mouth of the corporation; and 2dly, that if he is strictly a judge, he is not such a judge as was contemplated by the constitution in the prohibition.

As to the first question, we think there can be no doubt, but that in the strict legal sense of the word, the recorder is a judge; he is a justice of the peace; he is a constituent and principal member of a court of record, empowered to hear, try and determine by a solemn judgment, a number of criminal offenders against the laws and peace of the commonwealth. Lord Chief Justice HOLT, in 1 Salk. 200, is made to say, wherever a power *is given to examine, hear and punish, it is a judicial power, and they in whom it is reposed, act as judges. [*315

Much has been said to investigate the origin and nature of the office of recorder of the city of London; but whatever other power that recorder may possess, it seems impossible to say, when he sits in a court of record to administer justice, and to hear and determine questions of law and fact, that he is not in that capacity a judge. In 1 Bac. Abr. 657, said to be written by Lord Chief Baron GILBERT, it is expressly said, that in the Court of Hustings at Guildhall, before the lord mayor and sheriffs, when any matter is to be argued and determined, the recorder sits as judge with the mayor and sheriffs, and gives rules and judgments therein.

The more doubtful question in the present case is, whether the recorder is such a judge as the constitution meant to prohibit from holding at the same time, an office of trust or profit under the United States.

It is not easy to get at the real meaning of a deliberative body. Some of its members may have meant by the same words very differently from others; even their debates and minutes afford frequently very uncertain lights, and are therefore not to be relied on. The only true and legal way of judging, is from the words of the instrument taken all together, which they finally agree upon.

The general operative motive which induced the convention to adopt any disqualification of the nature of the present, seems to have arisen from an apprehension of a possible collision, between the general and state governments, and a jealousy lest the admission of their officers into our places of trust and power, might lead to a possible preference in the minds of those who might hold offices under both, in favour of the general government, to the prejudice of the state government. Whether this was a reasonable or unreasonable jealousy, it is not our business to examine. They have not, however, extended it to all state officers. The question before us is, whether there are any words or expressions in the instrument, indicative of their intention either to extend the word *judges* to all, who in strictness of law

come under that denomination, or to restrain it to judges of a particular class.

In considering this question, we acknowledge our judgments have vibrated between two opinions. We have, however, at length made up our minds to the best of our understandings, and we hope without prejudice or partiality. From the generality of the word *judge*, used in the constitution, without any limitation or exception whatever, and from supposing that the *316] \*mischiefs intended to be prevented by the prohibition, extended equally to the case of every judge, we were at first strongly inclined to the opinion, that every judicial officer was included in the prohibition : but on further consideration, and analysing such parts of the instrument as relate to this subject, our opinions preponderate in favour of the contrary construction, that the recorder of the city court is not included in the prohibition.

Our reasons are these :—First, justices of the peace, a part of the judiciary power, although a numerous body of men dispersed throughout the state, and particularly designated by that name, are not *eo nomine* included in the prohibition, for which I cannot account, but on the presumption that they were not intended to be included in it, and of course that every judicial power was not intended to be included. The Courts of Quarter Sessions for each county, by the 5th article of the same constitution, are made part of the judicial power of the state, and yet are not expressly included. The city court is not mentioned in the 5th article as part of the judicial power of the state, much less, therefore, can that court, or its members, be supposed to be included in it.

Again, not only some of the judicial characters, as justices of the peace, are omitted in the prohibition, but others, as registers of wills, although as constituting a part of the Register's Court, they are declared to be part of the judicial power of the state, are particularly included in the prohibition, shewing the sense of the convention, that every person exercising judicial power was not intended to be included under the word *judge*, otherwise it would have been nugatory to have expressly included the registers.

Again, the word *judge* in the constitution is immediately followed by the words, secretary and treasurer. These can only mean secretary of the state and treasurer of the commonwealth, and with no appearance of reason can be supposed to mean the secretary and treasurer of every corporate body within the state. If then, these general descriptions are to be restrained, and the constitution does not mean to include every judicial character in the state, what is the restriction most consonant to the general tenor of the instrument, with respect to the word *judge* ? The convention in other parts of their instrument, have expressly denominated certain judicial officers by the appropriate name of judges, namely, the judges of the Supreme Court, and judges of

[Young v. Pemberton's Administrators.]

the Courts of Common Pleas, and no others ; and the subsisting laws of the state have denominated the judges of the High Court of Errors and Appeals and no others by that name ; and all these being about ninety in number when the new constitution was *framed, are generally and exclusively styled judges by the people, in contradistinction to all others who exercise [*317 judicial powers, from whence we are induced to conclude, that the word *judge* in the constitution was intended to be confined to such judges only as were thus distinguished by the constitution, the existing laws of the state and general language of the country. It is evident, it was considered there were other characters who might in future be thought proper to be included in the prohibition. It was therefore left to future legislatures to declare what other offices than those enumerated, should be incompatible with appointments under the United States.

In addition to what I have said, I would here cite by way of illustration, a case which bears in some respects upon both the points, Dr. Greenvelt *v.* Dr. Burnel and others, in Carth. 491. It was an action of assault, battery and false imprisonment, brought against the defendants as censors of the college of physicians, who had fined and imprisoned the plaintiff for mal-practice as a physician. Lord Chief Justice HOLT said, that the defendants were not punishable for what they did by virtue of their judicial power, and he laid it down for a ground, that wherever a statute gives a power to fine and imprison, the persons to whom such power is given, are judges of record, and their court is a court of record. I would then ask, whether if such a court of physicians had existed in this state, would they, because they are called judges of record, have been included in the prohibition under the word *judge* in the constitution ? I conclude not.

Upon the whole, we are of opinion that judgment be rendered for the defendant.

Referred to in 17 S. & R. 233.
Cited in 65 Pa. 83 to show that a recorder is a judge of a court of record. In consequence of the decision of *Respublica* v. *Dallas* the act of Feb. 12, 1802, was passed declaring that any person who shall hold any office or appointment of profit or trust under the United States, shall be incapable of holding at the same time, the office of justice of the peace, mayor, recorder, etc.