THE STATE OF DELAWARE, upon the relation of HERBERT H. WARD, Attorney-General, *vs.* PHILIP Q. CHURCHMAN.

*Quo Warranto—Pleading—Demurrer—Constitution—Statute; Construction of—Municipal Court—Inferior Court; Judge of— Public Officer; Appointment of—Confirmation by Senate—Judgment of Court.*

1. The Municipal Court of the City of Wilmington is an inferior court within the scope and meaning of the constitutional provision authorizing its establishment. And as such inferior court, it necessarily became, from the time of its establishment, one of the courts under the judicial system of the State authorized by the Constitution.

2. The fact that the authority of the Court to administer criminal justice is limited to a certain locality or district, does not make the duties which the possession of such power imposes, nor the agents charged with the performance thereof, any more or less public in their character.

3. The said Municipal Court, in the administration of the criminal laws of the

State confided to it, although circumscribed within well defined limits, is a public or State agency; and its Judge is a public officer, to the extent at least, of the enumerated powers and duties imposed upon him by the Legislature pursuant to the constitutional provision.

4.   The Judge of said Municipal Court is an "officer" within the meaning and purpose of Section 9 Article 3, of the Constitution, (the salary, fees and emoluments of his office exceeding the sum of $500 annually) whose appointment must be confirmed by the Senate.

5.   Judgment of the Court.

*(March 27, 1901.)*

LORE, C. J., and PENNEWILL and BOYCE, J. J., sitting.

*Robert G. Harman* and *J. Harvey Whiteman* for plaintiff.

*Walter H Hayes* and *Herbert H Ward* for defendant.

Superior Court, New Castle County, FebruaryTerm, 1901.

INFORMATION in the nature of a writ of *quo warranto* (No. 144 February Term, 1901).   The information was in the following form :

"The information of Herbert H. Ward, Attorney-General of the State of Delaware, respectfully showeth and gives the Court here to understand and be informed that the term of office of former Judge J. Frank Ball, who was City Judge of the Municipal Court for the City of Wilmington, terminated and expired on the twenty-first day of October, A. D. 1900, and a commission to act and discharge the duties of City Judge of the Municipal Court for the City of Wilmington, was thereupon, on the twenty-second day of October A. D. 1900, duly issued by the then Governor of the State of Delaware, Ebe W. Tunnell, to one Edward R. Cochran, Jr., Esq., the said Edwin R. Cochran, Jr., Esq., being at the time said Commission was issued to him a resident of the City of Wilmington and State of Delaware, and a man learned in the law and of at least seven years standing as a practicing attorney in the Superior

Court of the State. The said Commission was and is in the words and figures following:

" THE STATE OF DELAWARE.

" To EDWIN R. COCHRAN, Jr., Esq.,
    " of New Castle County, Greeting:

" KNOW YOU That reposing special trust and confidence in your knowledge, integrity, prudence and ability, we have constituted and appointed, and by these presents do constitute and appoint you, the said, Edwin R. Cochran Jr., to be City Judge of the Municipal Court for the City of Wilmington, giving hereby and granting unto you the said Edwin R. Cochran, Jr., full power and authority to execute and discharge the said office of City Judge of the Municipal Court for the City of Wilmington in all the several parts and branches thereof; and keeping of all records, books, papers and writings whatsoever to the said office belonging:

" TO HOLD, EXERCISE AND ENJOY THE SAID OFFICE, with all fees, perquisites, emoluments and advantages thence lawfully arising or thereunto of the right in anywise appertaining, until your term therein, according to law, shall of course expire; you behaving yourself well so long in the said office.

" IN WITNESS WHEREOF THE GREAT SEAL OF THE STATE OF DELAWARE is hereunto affixed. WITNESS Ebe W. Tunnell, Esquire, Governor of the said State, at Dover, the 22nd day of October in the year of our Lord one thousand nine hundred, and in the year of the Independence of the United States of America the one hundred and twenty-fifth.

[SEAL]

    " EBE W. TUNNELL.

" By the Governor:
    " J. H. HUGHES,
        " Secretary of State."

"The said Edwin R. Cochran, Jr., Esq., on receiving his said commission to discharge the duties of City Judge of the Municipal Court for the City of Wilmington, forthwith duly qualified and entered upon the discharge of his said duties, and continued in the discharge of his said duties as Judge of said Court until on or about the eleventh day of March, A. D. 1901, at which time, to wit—on the eleventh day of March, A. D. 1901, one Philip Q. Churchman, by and with the assistance of one George Black, Captain of Police for the City of Wilmington, and the then acting High Constable or Chief of Police of the said City of Wilmington, did forcibly and against the strength, will and solemn protest of the said Edwin R. Cochran, Jr., Esq., oust him the said Edwin R. Cochran, Jr., Esq., from the said office of City Judge of the Municipal Court for the City of Wilmington, and he the said Philip Q. Churchman, Esq., did forthwith thereupon unlawfully, wrongfully and without color of right install himself in, and usurp and hold the said office of City Judge of the said Municipal Court for the City of Wilmington in the County and State aforesaid, and still doth continue to unlawfully, wrongfully and without color of right, usurp and hold the said office, and all the rights, and emoluments attached thereto contrary to the statute in such case made and provided, and against the rights of the said Edwin R. Cochran, Jr., Esq., wherefore your relator prays that a rule issue out of this Honorable Court, requiring the said Philip Q. Churchman, Esq., to appear in said Court on some day to be named by said Court to show cause, if any he has, why leave should not be granted to file this information.

"HERBERT H. WARD.
"Attorney-General."

DEFENDANT'S PLEA.

"AND NOW TO WIT, This fourteenth day of March, A. D. 1901, the said Philip Q. Churchman, the defendant in the above stated cause, by Walter H. Hayes and Herbert H. Ward, his

attorneys, as to the information filed in said cause, says: that true it is that the term of office of former Judge J. Frank Ball, as City Judge for the Municipal Court for the City of Wilmington, terminated on the twenty-first day of October, A. D. nineteen hundred, and that a commission to act and discharge the duties as City Judge of the Municipal Court for the City of Wilmington was, on the twenty-second day of October, A. D. 1900, duly issued by the then Governor of the State of Delaware to one Edwin R. Cochran, Jr., Esquire, which commission was in the words, letters and figures as set out in said information, and that the said Edwin R. Cochran, Jr., Esquire, was then and there a resident of the City of Wilmington and a man learned in the law, and of at least seven years standing as a practicing attorney in the Superior Court of this State; and that the said Edwin R. Cochran, Jr., Esquire, thereupon duly qualified and entered upon the discharge of his said duties, and continued in the discharge thereof until the eleventh day of March, A. D. 1901.

" And said defendant further saith that the Senate and House of Representatives of the State of Delaware convened in General Assembly in regular bi-ennial session on the first Tuesday in January, A. D. 1901, and that said session of the said General Assembly adjourned without day on the eighth day of March, A. D. 1901, and that the said Senate so adjourned on said last mentioned day. That said session of said Senate was ' the next session of the Senate' after the said twenty-second day of October, A. D. 1900. That on or about the fourth day of January, A. D. 1901, the then Governor of the State of Delaware nominated and appointed and sent the name of the said Edwin R. Cochran, Jr., Esquire, to the said Senate for the consent of a majority of all the members elected to said Senate, that said Edwin R. Cochran, Jr., Esquire, be the City Judge of the Municipal Court for the City of Wilmington in lieu of the Honorable J. Frank Ball, whose said term of twelve years commencing on said twenty-second day of October, A. D. 1901. That on or about the sixteenth day of January, A. D. 1901,

the said Senate by the votes of a majority of all the members elected to said Senate refused to consent to said nomination and appointment of said Edwin R. Cochran, Jr., Esquire, to said office for said term, or otherwise, and said majority of all said members elected to said Senate never consented at any time to said nomination and appointment. That no session of said Senate other than the session aforesaid has been held since the said twenty-second day of October, A. D. 1900.

" And the said defendant further saith that the salary, fees and emoluments of the said office of the City Judge aforesaid did, since the said twenty-second day of October. A. D. 1900, and still continue to exceed the sum of five hundred dollars annually, to wit, the salary of said office of said City Judge is fifteen hundred dollars per annum, as provided in the statute of the State of Delaware in that behalf.

" And said defendant further saith that on the ninth day of March, A. D. 1901, after the said adjournment of the said session of the said Senate, the Governor of the State of Delaware granted unto this defendant, who then and there was a resident of the said City of Wilmington, a man learned in the law and of at least seven years' standing as a practicing attorney in the Superior Court of the said State, a commission in the words, letters and figures following, to wit : "

(Here follows the commission from Governor Hunn to Philip Q. Churchman, being in the same form as the commission above set forth.)

" Which said commission was received and accepted by said defendant, who forthwith duly qualified as City Judge of the Municipal Court for the City of Wilmington. That at nine o'clock on the morning of the eleventh day of March, A. D. 1901, the said defendant, commissioned and qualified as aforesaid, appeared in the Court Room at the City Hall of the City of Wilmington, that being the time and place fixed by law for a regular session of

the said Municipal Court for the City of Wilmington, and then and there discovered and ascertained that the said Edwin R. Cochran, Jr., Esquire, was then and there assuming and attempting to discharge the duties of the office of the said City Judge of the Municipal Court for the City of Wilmington; that the said defendant then and there, thereupon advised and informed the said Edwin R. Cochran, Jr., Esquire, that the said defendant had been appointed and commissioned on the ninth day of March, A. D. 1901, by the Governor of the State of Delaware, City Judge of the Municipal Court for the City of Wilmington, and thereupon exhibited and read to the said Edwin R. Cochran, Jr., Esquire, and to such other persons as were then and there present, his, the said defendant's said commission, and demanded that the said Edwin R. Cochran, Jr., Esquire, cease from assuming and attempting to discharge the duties of the said office, and to vacate the chair of the said Judge, each and all of which the said Edwin R. Cochran, Jr., Esquire, then and there refused to do. Thereupon the said defendant, City Judge as aforesaid, directed one George Black, Captain of Police for the City of Wilmington, and then Acting High Constable or Chief of Police for said City of Wilmington, to remove the said Edwin R. Cochran, Jr., Esquire, from said chair of said City Judge; and that thereupon said George Black mildly placed his hand upon the said Edwin R. Cochran, Jr., Esquire, then and there so occupying the said chair of the said City Judge, and requested him, the said Edwin R. Cochran, Jr., Esquire, to vacate the said chair, which the said Cochran then and there did, protesting against said action; and thereupon the said defendant assumed the said chair of the City Judge of the Municipal Court for the City of Wilmington, and then and there entered upon his duties of the said office, and yet continues to perform the said duties of the said office, as he is authorized and directed by his said commission.

" WITHOUT THIS, That on the eleventh day of March, A. D. 1901, one Philip Q. Churchman, by and with the assistance of one

George Black, Captain of Police for the City of Wilmington, and the then Acting High Constable or Chief of Police of the said City of Wilmington, did forcibly and against the strength, will and solemn protest of the said Edwin R. Cochran, Jr., Esquire, oust him, the said Edwin R. Cochran, Jr., Esquire, from the said office of City Judge of the Municipal Court for the City of Wilmington, and he, the said Philip Q. Churchman, Esquire, did forthwith thereupon unlawfully, wrongfully and without color of right install himself in, and usurp and hold the said office of City Judge of the said Municipal Court for the City of Wilmington in the county and State aforesaid, and still doth continue to unlawfully, wrongfully and without color of right, usurp and hold the said office, and all the rights and emoluments attached thereto contrary to the statute in such case made and provided, and against the rights of the said Edwin R. Cochran, Jr., Esquire.

" And this the said defendant is ready to verify, etc.   Wherefore, etc., the said defendant prays judgment, etc."

### DEMURRER TO PLEA.

" And the said plaintiff, by Robert G. Harman and J. Harvey Whiteman, his attorneys, as to the said plea of the said defendant, by him pleaded, saith that the same, and the matters therein contained, in the manner and form as the same are pleaded and set forth, are not sufficient in law to bar or preclude him, the said plaintiff, from having or maintaining his aforesaid action thereof against the said defendant, that the consent of a majority of all the members elected to the Senate of the State of Delaware to the said appointment of the said Edwin R. Cochran, Jr., Esquire, to be the City Judge of the Municipal Court for the City of Wilmington is not required by law, and that he, the said plaintiff, is not bound by law to answer the same.   And this the said plaintiff is ready to verify.   Wherefore, by reason of the insufficiency of the said plea in this behalf the said plaintiff prays judgment," etc.

BOCYE, J. :

The information and plea filed, which appear in the statement of the case, disclose fully the contentions between the parties to this proceeding, and it is unnecessary to set them forth in this opinion. Issue has been joined upon the demurrer to the plea, and the main question presented for our consideration and determination is the principal averment contained in the demurrer in words following: " That the consent of a majority of all the members elected to the Senate of the State of Delaware to the said appointment of the said Edwin R. Cochran, Jr., Esquire, to be the City Judge of the Municipal Court for the City of Wilmington is not required by law."

We may be permitted to say that we have given the question presented calm and deliberate consideration and we have reached, what seems to us, the only just and impartial conclusion warranted under the provisions of the Constitution and statute applicable to the case.

In noticing certain cases presented in the argument, we may say that the issue before us is not one involving the constitutionality of the act establishing the said Municipal Court, as was the main question before the Court in the case of *Gray vs. State, 2 Harr., 76;* nor is it simply whether the Judge of said Municipal Court is strictly a *corporate* and not a *civil* officer, within the meaning of the Constitution, such as was raised in the case of the *State vs. The Wilmington City Council, 3 Harr., 294;* nor is it whether the incumbent of the office of the said Municipal Court, while holding said office, is disqualified from holding a certain other office under the United States, or in this State, by reason of the provision in the State Constitution denying any person the privilege of holding more than one of certain designated offices, such as was the main question before the Court in the case of *Commonwealth vs. Dallas, 3 Yeates, 300.*

Differing in its nature and character from any of the cases

above cited, the question here is whether the appointment of the plaintiff to be Judge of the said Municipal Court made by the Governor required the consent of a majority of all the members elected to the Senate before the end of the session thereof next succeeding his appointment, under any provision contained in the Constitution of 1897 considered in connection with the statute establishing said Municipal Court. None of these cases is particularly helpful in determining this question, because neither of them presents or deals with the precise question raised by the pleadings in this case. Our investigation is almost, if not altogether, confined to the Constitution itself, considered in connection with the act establishing the said Municipal Court, and the relation each bears to the question in hand.

It may be said that whatever may have been the character, jurisdiction and powers, either of the corporation of the City of Wilmington or of the City Court, at any time prior to the first day of June, 1883, when, under the act of the General Assembly, passed at Dover April 13th in the same year, the present Municipal Court was established, they are not necessary to be considered in disposing of this case. The fact is that by the said act the said Municipal Court was established with a distinct character of its own, possessing the powers and jurisdiction conferred upon it by the act; and whatever powers and duties former city courts, established for the corporation of the City of Wilmington, possessed and exercised, we must look to the said act of 1883, and any amendment thereto, for the grant of power and jurisdiction which was conferred upon and is now exercised by the present Municipal Court. And we need not, and should not, look further than here stated, for, whether the corporation of the City of Wilmington once enjoyed and exercised the franchise of holding a Court, or whether that franchise was subsequently enlarged, it in no wise aids or assists us in reaching a proper conclusion in this case; for it is well settled law that municipal corporations and corporate courts are subject to legislative control, except in so far as the Legislature may

be inhibited by the Constitution. As was said by the late Court of Errors and Appeals, in the case of *Coyle vs. McIntire, 7 Houst., 44,* the City of Wilmington being a municipal corporation, all its powers, and, we may add, as well, the jurisdiction and powers of the Municipal Court, under its charter, are subordinate to the powers of the Legislature. And the Legislature, having the power to repeal the corporate existence has likewise the power to alter, amend, or abolish any of the agencies thereof through which the powers of the corporation are exercised, or to change them or to substitute others in their place.

Turning again to the act creating the said Municipal Court, we find by section 14 thereof, being *Chapter 207, Vol. 17, Laws of Delaware,* that said Court was established, and by section 15, that its powers and jurisdiction, so far as they correspond with and are authorized by and enumerated in *Section 15, Article 6 of the Constitution of 1831,* are granted and defined. Looking at this special grant of jurisdiction, the conclusion follows inevitably that the said Municipal Court is an inferior court within the scope and meaning of the constitutional provision authorizing its establishment.

*Gray vs. State, supra; Mayor and Council of Wilmington vs. Vandegrift, 1 Marvel, 13; Forbes, et al., vs. State, 1 Pennewill, 197.*

And whatever may be said of the nature and character of the other powers conferred upon and entrusted to the said Court by said act of Assembly, it has possessed from its very creation a character differing from that of a strictly corporate court. While exercising the duties and functions of a corporate court such as the execution and enforcement of ordinances, etc., for the corporation, it was, nevertheless, created in fact an inferior court such as is so denominated and expressly authorized by Section 15 Article 6 of the late, and Section 30, Article 4 of the present Constitution. And as such inferior court, it necessarily became from the time of its establishment one of the courts under the judicial system of the State authorized by the Constitution.

" It has been said that it is sometimes quite difficult to draw the line of distinction between strictly corporate duties and public duties * * * but in this case the distinction is so well marked that we are not embarrassed with any perplexing question of that sort * * *. It frequently occurs that the State, in the distribution of its, powers, for the sake of convenience and expediency, confides to certain local governments, within well defined territorial limits, the power to administer criminal justice therein. But because such authority is limited to a certain locality or district, it does not make the duties which the possession of such power imposes, nor the agents charged with the performance thereof any more or less public in their character."

*Mayor and Council of Wilmington vs. Vandegrift. Supra.*

The special powers and jurisdiction entrusted to the said Municipal Court by the General Assembly, under the said provision of the Constitution already mentioned, relate exclusively to infractions of certain criminal laws of the State within the corporate limits of the City of Wilmington, the enforcement of which laws in the absence of such an inferior court, or any other court authorized by the Constitution, is vested in the Court of General Sessions —a State Court. It seems to us, therefore, from what we have said, the conclusion that the said Municipal Court is something more than a mere corporate agency, is irresistible. While performing certain *corporate* duties, it is true, yet it is clothed with higher and more important *public* duties. It is stamped with a greater dignity and is of more public importance than that of a mere corporate court or agency. And by the specific grant of jurisdiction conferred upon it under constitutional authority, it follows, we think, that said court in the administration of the criminal laws of the State confided to it, although circumscribed within well defined territorial limits, is a public or State agency. And its Judge, charged with duties, it may be said dual in their character—public

and corporate—is a public officer to the extent, at least, of the enumerated powers and duties imposed upon him by the Legislature, pursuant to said provision in the Constitution. He is a Judge of an inferior court, established by the General Assembly under said section of the late Constitution, which with some alterations therein was incorporated in the present Constitution; and as a Judge of such inferior court he is an "officer" within the meaning and purpose of Section 9 Article 3, of the present Constitution, (the salary, fees and emoluments of his office, exceeding the sum of $500 annually) whose appointment must be confirmed by the Senate, as provided by the said last mentioned section.

And while, as we have already said, the main question before the Court in the case of *Gray vs. State supra,* was an attack upon the validity of the act of the General Assembly, creating the Mayor's Court, it was also objected that the Legislature could not bestow upon the said corporation the right to appoint the officers of such court because of Section 8, Article 3 of the the then recently-adopted Constitution (1831), which provided that "he," (the Governor) "shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for." The Court in meeting this objection, said:—"these are not officers, either of the State or county, but of the corporation; and, though it should be conceded that the Court, as a Mayor's Court, under its enlarged jurisdiction and new name, is established by the act of 1832, *it is only by the increase of powers of officers existing before the Constitution, and whose appointments are therein otherwise provided for,* to wit:—*by the saving of the right to the corporation of Wilmington to elect its own officers* * * * *. They (the Legislature) were authorized to select this corporation court and bestow upon it all the jurisdiction that they could confer on any inferior court of their creation. Having selected it, and established it as a Court with enlarged powers, *the appointment of its officers remains as heretofore in the corporation.*" A pertinent and controlling fact in this case

is that the *appointment of the Judge* for said Municipal Court as it is now established, *does not remain in the corporation* of the City of Wilmington, but such appointment is, under the act creating said Court, reposed in the Governor of the State. And whether it be conceded, or not, that the said Judge is an officer of the corporation, we must look outside of the reasoning pursued and the conclusion reached in that case to determine this. And in doing so, it will be necessary, as we have already said, to examine the provisions of the present Constitution in connection with the act establishing the said Municipal Court. By the said act it is made the duty of the Governor to appoint and ,commission the said City Judge. And said Section 9, Article 3, of the present Constitution provides that the Governor shall have power, unless herein otherwise provided, to appoint, by and with the consent, etc., such officers as he is, or may be, authorized by this Constitution, or by law to appoint.

It will be observed that the phraseology of this section is quite different from that of the corresponding section above, contained in the late Constitution. "Shall appoint all officers whose offices are established by the Constitution or shall be established by law," is the language in the latter section; and it will be further observed that the phrase "or shall be established by law" in that section imports a future operation and carries with it the purpose of a prospective application.

"Shall have power * * * to appoint * * * such officers as he is, or may be, authorized by this Constitution, or by law to appoint," is the language of the present Constitution; and the phrase "such officers as he is or may be authorized * * * by law to appoint" imports a present as well as a future operation and carries with it a purpose and design as comprehensive in legal contemplation as is the language of the phrase itself; and we fail to see how these words, broad as they are in their meaning and scope, do not embrace and carry with them in their legal significance the appointment to the office of City Judge of the said Municipal Court,

which appointment by the Governor is expressly authorized by law, under the act of the Assembly creating said Court, duly enacted before and in force at the time of the adoption of the present Constitution. For as was said in the Forbes case, *supra*, the words "established or to be established," in the natural and ordinary meaning, reasonably imply that the framers of this (the present) Constitution contemplated the continued existence of some inferior court or courts, such as said Municipal Court, lawfully established by the General Assembly before, and legally existing at the time the present Constitution was to become operative; and this being so, the language of said Section 9, Article 3, considered in its natural and ordinary meaning reasonably implies that the framers of the present Constitution, having in contemplation the continued existence of the said Municipal Court and the future appointments of its Judge, and likewise the appointments of such other officers as the Governor was then authorized by law to appoint whose salaries exceed $500 per annum, broadened the language of said last mentioned section over that used in the corresponding section in the late Constitution for the purpose of making confirmation by the Senate of such future appointments necessary. We think it altogether improbable, if not unreasonable, to conclude that the members of the late Constitutional Convention, having, as they must have had, the existence, continuance and importance of the office of said Municipal Judge in contemplation, would not, and did not, throw around the future appointments to said office of Municipal Judge the same check placed upon other appointments by the Governor to minor and less important offices. The language of said Section 9, Article 3 is too broad and comprehensive in its meaning and legal import for *any* such strict and limited construction as we have been urged to place upon it by the counsel for the plaintiff, in a very able and interesting manner. We think that said section is both "applicable and adequate" for the purpose for which it has been invoked by the defendant in this case.

Finally, the last clause of said Section 9, Article 3, provides that *unless herein otherwise provided*, confirmation by the Senate of officers appointed by the Governor shall be required only where the salary, fees, and emoluments of office shall exceed the sum of $500 annually; and we may reasonably conclude that the real purpose of Section 32, Article 4 of the present Constitution, it being a special provision in relation to the appointment and confirmation of Justices of the Peace and of Judges of such courts as the General Assembly may establish, pursuant to the provisions of Section 1 or Section 30 of said Article 4, was to make the appointments of Justices of the Peace and of the Judges of such inferior courts as the General Assembly may establish, subject to confirmation by the Senate, notwithstanding that the salaries, fees, etc., of such offices might be less than the sum of $500 annually. It is a well known fact that fees, etc., of many of the Justices of the Peace *do* not, and those of the judges of newly established inferior courts, if such should be established, might not exceed the said sum, and because of this and the importance of such offices we may assume that the said special provision was incorporated in the Constitution for the purpose of making the said last clause of said Section 9 Article 3 inapplicable to the appointments of Justices of the Peace and of the judges of such inferior Courts.

The appointment of the plaintiff to be City Judge for the Municipal Court for the City of Wilmington, having failed of confirmation by the Senate at its session, next succeeding his said appointment, the commission issued to the plaintiff by the Governor for said office expired at the end of the next session of the Senate.

The demurrer is, therefore, overruled, and judgment is rendered for the defendant, viz:

And now, to wit, this twenty-seventh day of March A. D. 1901, all and singular the premises, being seen, heard, and by the Court here fully understood, and mature deliberation being there-

upon had, it appears to the Court here, that the said plea of the said Philip Q. Churchman, the defendant, above pleaded, and the matters therein contained, are sufficient in law to preclude the said Attorney-General from having and maintaining his said action against the said defendant in manner and form as the said Attorney-General has above alleged;

Wherefore the said Court also consider that the said defendant do recover against the said State of Delaware the sum of ten and seventy-five one hundredths dollars, for his costs and charges by him about his defense in this behalf sustained to the said Philip Q. Churchman by the Court now here adjudged, according to the form of the statute in such case made and provided.

And it is further considered by the Court here that the aforesaid office of City Judge of the Municipal Court for the City of Wilmington, in form aforesaid, claimed by him, the said defendant, be allowed to him, the said defendant, and that he be and is dismissed and discharged by the Court here, of and from the premises aforesaid.