THE STATE OF DELAWARE upon the relation of HERBERT H. WARD, Attorney-General, plaintiff below, plaintiff in error, *vs.* PHILIP Q. CHURCHMAN, defendant below, defendant in error.

*Writ of Error—Quo Warranto—Demurrer—Constitution—Statute; Construction of—Municipal Court; Judge of, not State or County Officer—Municipal Officer—Appointment of; Confirmation by Senate not Required— Reversal of Court below.*

1.   In adopting the language of a prior statute or constitution, the Legislature or Constitutional Convention are presumed to have had in mind the construction given to it by the Court.

2.   The word "officers" in the appointing clause of the Constitution of 1897 applies to State and county officers only, and not to the officers of a municipal corporation.

3.   The City Judge of the Municipal Court for the City of Wilmington is an officer of a municipal corporation, and therefore not within the purview of the appointing clause of said Constitution.

4.   The appointment of a City Judge of the Municipal Court for the City of Wilmington is a valid appointment without confirmation by the Senate.

5.   The judgment of the Superior Court in the case of *The State of Delaware upon the relation of Herbert H. Ward, Attorney-General, vs. Philip Q. Churchman, 3 Pennewill, 167,* reversed.

(*January 22, 1902.*)

NICHOLSON, Ch., and SPRUANCE and GRUBB, J. J., sitting.

*Robert G. Harman* and *J. Harvey Whiteman* for plaintiff in error.

*Walter H. Hayes* and *Herbert H. Ward* for defendant in error.

Supreme Court, June Term, 1901.

WRIT OF ERROR to the Superior Court for New Castle County. INFORMATION in the nature of a writ of *quo warranto.*

NICHOLSON, Ch. :

The question before us under this writ of error, is whether the appointment of Edwin R. Cochran, as Judge of the Municipal Court for the City of Wilmington, must have been confirmed by the Senate in order to have extended his term of office beyond the rising of the Senate on March 8, 1901.

The case was argued before the Superior Court in and for New Castle County on an information in the nature of a writ of *quo warranto.* Issue was joined upon demurrer to the plea, and the demurrer overruled by the Court below.

The two assignments of error are general as follows, to wit :

*First.* " That the Court below erred in overruling the demurrer of the plaintiff below to the answer of the defendant below and in rendering judgment thereon for the defendant below, whereas the said plaintiff insists that the said demurrer should have been sustained, and the judgment thereon should have been rendered for the plaintiff below.

*Second.* " That the judgment below on said demurrer should have been for the plaintiff below, and not for the defendant below."

The Municipal Court is a statutory tribunal, provided for in the charter or organic act of the City of Wilmington, being *Chap. 207, Vol. 17, Del. Laws,* entitled, " An act to revise and consolidate the statutes relating to the City of Wilmington," passed April 19, 1883. Section 14 of that act is in part as follows : " From and after the first day of June, A. D. 1883, there shall be and is hereby established within the said City a Court of record and of law, which shall be known by the name, style and title of ' The Municipal Court for the City of Wilmington,' and it shall be the duty of the Governor, before the first day of June aforesaid, to appoint and commission a City Judge, who shall have power and authority to hold and keep said Court of Record."

His term of office was fixed at twelve years unless sooner re-
moved by the General Assembly, and in additon to the sole orig-
inal jurisdiction in all cases of the violation of " any of the laws,
ordinances, regulations or constitutions of the City," he was also
given sole and exclusive jurisdiction of " all those criminal matters
and offenses enumerated in the Fifteenth Section of the Sixth Ar-
ticle of the Constitution " of 1831, when the offense was com-
mitted within the City ; that being the section in the Constitution
then existing which prescribed the criminal jurisdiction that might
be given by the General Assembly to any inferior courts they might
establish.

In the case of *Forbes and Hartman vs. The State of Dela-
ware, 2 Pennewill, 197*, it was contended that the amended Consti-
tution of 1897 had effected the repeal of all these provisions, and
that the Municipal Court for the City of Wilmington no longer
existed : but it was finally decided by the Supreme Court on writ
of error, Judge Grubb delivering the opinion of this Court, " that
the said Municipal Court for the City of Wilmington, its Judge
and its jurisdiction, were continued and existing under and by
virtue of the provisions of the present Constitution and Schedule."

In the present case the contention is, that the method of ap-
pointment of the said City Judge prescribed by the statute we have
cited, has been altered by the amended Constitution.   It therefore
becomes necessary now for us to decide whether the statutory pro-
vision above quoted, which provides for the appointment of the
City Judge by the Governor without confirmation, continues to
exist unaffected by the present amended Constitution and its Sched-
ule, or whether the consent of the Senate has become necessary to
the validity of his appointment.

Section 9, Article 3, of the amended Constitution of 1897, re-
ferring to the Governor, provides as follows :  " He shall have
power, unless herein otherwise provided, to appoint, by and with
the consent of a majority of all the members elected to the Senate,
such officers as he is or may be authorized by the Constitution, or by
law to appoint."

It is contended by the respondent, and it was so held by the Court below, that this language applies to the appointment of the City Judge of the Municipal Court for the City Wilmington, and operates as a repeal of that part of the statute above cited which provides for his appointment by the Governor without confirmation.

The learned judge who delivered the opinion of the Court below, states the conclusion to which the Court arrived with reference to the meaning of the clause I have quoted, in the following language: "And we fail to see how these words, broad as they are in meaning and scope, do not embrace and carry with them in their legal signification, the appointment to the office of City Judge of the said Municipal Court, which appointment by the Governor is expressly authorized by law, under the act of Assembly creating said Court, duly enacted before, and in force at the time of the adoption of the present Constitution."

Now Article 4 of the present Constitution contains all the provisions relating expressly to the appointment of judicial officers, including Justices of the Peace and the Judges of such courts as the General Assembly might establish pursuant to the provisions of Section 1 and Section 30 of that article, Section 30 being the article corresponding in the present Constitution to Section 15, Article 6, of the late Constitution of 1831, which as we have already noted, prescribes the jurisdiction that might be given by the General Assembly to any inferior courts it might establish. And yet, it is not even contended that any reference whatever is made in Article 4 to the appointment of the said City Judge, or to the appointment of the Judge of any Court established by the Legislature before the present Constitution took effect; so that it will be necessary to examine specially the provisions contained in that Article and to determine the effect of such omission upon the interpretation of the general provision of appointment above cited, before we can consider that the question has been adequately, much less exhaustively discussed. In the first place, however, it will be well

to consider the real meaning and necessary limitation of the words already cited from Section 9, Article 3, taken by themselves in the light of the general principles of statutory construction and those decisions of our own courts which have construed similar, if not identical language in the late Constitution of 1831.

It cannot be doubted, as a general proposition of law applying to the construction of statutory and constitutional provisions alike, that the words " offices " or " officers " taken by themselves, in a statute or Constitution, mean State or county " offices " or " officers " only and cannot be construed to mean the offices or officers of municipal or other corporations, unless there be language expressly or by necessary implication extending their meaning to corporation officers.

This seems to be admitted by counsel for the respondent, whose brief is chiefly directed to showing that the City Judge of the Municipal Court for the City of Wilmington is a State Judge, while it is clearly assumed to be the rule in the opinion of the Court below, which elaborately discusses the Municipal Court for the purpose of showing that the City Judge is not a mere corporate officer.

The authority in our own State discussed in every argument made in the cause, and one that requires careful analysis and consideration, is the case of *Welcome Gray vs. the State of Delaware, 2 Harr., 76,* decided in 1833, after being elaborately argued by George Read, Jr., and Richard H. Bayard the Attorney-General. A clear comprehension of that case and its force as a precedent should be had at the outset.

The amended Constitution which was " done in convention on the second day of December, A. D. 1831," provided, as we have seen, in Section 1 and Section 15 of Article 6, that the General Assembly might, with the concurrence of two-thirds, establish courts other than the courts specifically named, and prescribed the criminal jurisdiction that might be conferred by the General Assemby upon such inferior courts.

It also provided in Section 8, Article 3, the "he" (meaning the Governor) "shall appoint all the officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for." On the eighteenth of January, 1832, following close upon the adoption of these constitutional provisions, the Legislature passed an act entitled "A supplement to the act, entitled an act to alter and re-establish the Charter of the borough of Wilmington," being *Chap. 108, Vol. 8, Delaware Laws.* This act, in Section 17, provided that the mayor and alderman and president of the City Council or any two of them should have full power and authority to enquire of, etc., etc., and to try, etc., all larcenies, assaults and batteries, etc. And it further provided in the same section that " for the purposes aforesaid, the said mayor and alderman and president of the City Council, or any two of them, shall have full power and authority, and they are hereby vested with full power and authority, to hold and keep a court of record within the said City."

In Section 19 it provided, " that the said Mayor's Court shall have full power and authority to enquire of, hear, try and finally determine all those criminal matters enumerated in the Fifteenth Section of the Sixth Article of the amended Constitution," etc.

The succeeding sections contain other grants of jurisdiction, provide for appeals, etc., and finally Section 31 provides, " that the Solicitor of the corporation for the time being shall be *ex officio* the prosecuting officer in the said Mayor's Court, provided always that the Attorney-General of the State shall have the right of prosecuting in person or by deputy.

One Welcome Gray was tried by this newly established Court for assault and battery, and was found guilty and fined; whereupon he took a writ of error, George Read, Jr., being his counsel.

One of Mr. Read's assignments of error was that " the Legislature could not vest the power of judicial appointments in any corporation, private or public, and it was unconstitutional to do the same."

He urged in argument that these courts are unconstitutionally organized because the Judges are not appointed by the Governor, and his argument is further quoted by the official reporter as follows : " The Constitutional expression is, all offices not herein provided for. At the date of the Constitution, the Mayor's office did not exist. We must overlook the very words of the Constitution, to say that an act not professing in its terms to constitute an inferior tribunal, a supplement to a Wilmington Charter, creating an office, a judicial officer, a Judge of a new Court, vests him with new and enlarged powers, and yet claims in direct opposition to the Constitution to appoint this officer otherwise than by the Governor."

In the course of his argument with the Attorney-General this point is presented again and again by Mr. Read. The Superior Court, however, unanimously affirmed the judgment of the Mayor's Court, thereby deciding that, although its Judges were not appointed by the Governor, and although the act establishing the Court was passed after the amended Constitution took effect, and although Section 8, Article 3, of that Constitution declared that " he " (the Governor) " shall appoint all officers, whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for," yet, nevertheless, the organization of this Municipal Court, called the Mayor's Court, was not in conflict with the Constitution.

Now the force of a judicial decision as authority, especially outside of the Court's jurisdiction, is in general determined by the quality of the opinion accompanying it, upon the character and cogency of the reasoning upon which it is based, so that it is to be regretted that no opinion was pronounced by the Court in this case.

The distinguished reporter, Justice Harrington, prepared and printed an individual opinion, but in his report of the case he says: " The following opinion was drawn up, but not pronounced. A majority of the Court was not prepared at this time, and did not

think it necessary to express their opinion at large on some of the points raised in the argument. The Court merely decided that the Mayor's Court of the City of Wilmington has jurisdiction to try the offense of assault and battery."

This decision, however, possesses without regard to the reasons upon which it was based at the time, a controlling force in the interpretation of the constitutional provision under consideration and also of the statutory provisions we have cited, which establish the Municipal Court and prescribe the method of appointment of the City Judge. The reason being, that, as stated by the Chancellor in the case of *Wilmington City Railway Company vs. Peoples Railway Company, 47 Atl. Rep., 251;* " In the interpretation of statutes there is no canon of construction more inflexible, subject to certain obvious limitations, or more thoroughly well established than this : ' That when the terms of a statute which has received a judicial construction are used in a later statute, whether passed by the Legislature of the same State or country or by that of another, that construction is to be given to the later statute.' "

*Suth. Stat. Con., Sec. 333.*

A multitude of cases are cited in support of this in *23 Am. and Eng. Ency. Law, pp. 433, 434 ;* and this rule applies equally, if not *a fortiori*, to the terms used in a Constitution, the fundamental law of a State.

In adopting the language of a prior statute or Constitution, the Legislature or Constitutional Convention are presumed to have had in mind the construction given to it by the Courts. It follows, therefore, that if the construction put upon the word " officers " in the appointing clause of the late Constitution of 1831 was that it meant State or county officers only, then the Constitutional Convention of 1897 must be presumed to have had that construction in view when they used the same word in the appointing clause of the Constitution of 1897. And if the construction put upon the language establishing and regulating the jurisdiction of the Mayor's Court was that its Judges were municipal and not

State officers, then the Legislature must be presumed to have had that construction in view, so far as it adopted the same language in the act of 1883 creating the Municipal Court.

That a judicial decision of necessity involves the decision of all the questions necessary to the decision that are properly raised in the case in which it is given, is an elementary proposition, and therefore it cannot be denied that the decision in *Gray vs. The State* necessarily involved and is authority for such construction of the word "officers" in Section 8, Article 3, of the Constitution of 1831, and also such construction of *Chap. 108, Vol. 8, Delaware Laws*.

Hence it only remains to consider whether the provisions under consideration in the statute of 1883 and in the Constitution of 1897 differ, in any material to the point in issue, from the provisions in the Constitution of 1831 and the statute of 1832 construed by the Court in *Gray vs. State*.

Just here, however, it will not be amiss, before proceeding to compare the earlier and later provisions, to refer in passing to the case of the *State vs. Wilmington City Council, 3 Harr., 394,* where the Court held unanimously that in Section 8, Article 7, of the late Constitution of 1831,which provides that "no ordained clergyman or minister of the Gospel shall hold any civil office in this State," the words "civil office in this State" did not mean a municipal office, and that the office of Treasurer of the City of Wilmington was not a civil office in this State within the meaning of that constitutional provision, citing *Gray vs. State* and also the case of Judge Dallas, *3 Yeates, 300,* which was thoroughly discussed in both cases as well as in the cause before us.

The general provision concerning appointments by the Governor in the Constitution of 1831, is, as we have already noted, " he shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for." In the amended Constitution of 1897 it is, " he shall have power, unless herein

otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint."

A simple inspection of these two clauses thus placed together shows that the latter clause adopts the provision of the former clause with but two modifications, and both of these modifications are by way of limitation. *First,* the appointment must be by and with the consent of the Senate, and *second,* it must be of such officers " as he is or may be authorized by this Constitution or by law to appoint." Therefore, it would seem to follow inevitably that there is nothing in the language of the latter clause to negative the presumption that the word " officers " was adopted from the corresponding clause in the old Constitution in the same sense in which it had been held to be used in that Constitution ; that is, as applying to State and county officers only and not to corporation officers.

Again, a comparison of the provisions of the statute of 1883, establishing the Municipal Court, with the statute of 1832 establishing the Mayor's Court (both of these acts being organic acts or charters of the municipality) discloses a similarity, which is surprising when the interval of time is considered, and a jurisdiction in criminal matters which is almost identical, except that the latter statute does not attempt to confer upon the Municipal Court jurisdiction of the offenses mentioned in the seventeenth section of the former act and not mentioned in Section 15 of Article 6 of the Constitution, which as we have seen was the section of the Constitution that prescribed the criminal jurisdiction that might be conferred by the General Assembly upon inferior courts. In fact, the only important differences seem to be the name of the Court, the title of its Judge and the method of his appointment. It is the Municipal Court for the City of Wilmington, instead of the Mayor's Court; its Judge is called the City Judge and he must be appointed by the Governor, instead of being chosen by the City. Can it be

contended seriously that it depends upon how or by whom a Judge is selected whether he shall be held to be a corporation or a State officer ?

The absurdity of such a contention is very well shown by an illustration contained in the brief of appellant's counsel as follows : " Thus the Governor in the first instance, appointed the Directors of the Street and Sewer Department. This, according to the above contention, would make them State officers. At the expiration of the term of each of the appointees, his successor under the law is appointed by the Mayor. Therefore, after the Mayor made the first appointment, there would be two State Directors and one City Director, and so on as each new appointment was made until all of said Directors would be City Directors."

A comparison, item by item, as was made in the brief of the attorneys for appellant, of the jurisdiction and duties of the old Mayor's Court with those of the Municipal Court and City Judge including the matter of compensation, the appropriation made of the costs and fees, etc., etc., emphasizes the close resemblance, which is so great that all the arguments based upon the jurisdiction and duties of the City Judge in support of the contention that he is a State officer would apply with equal force to the Judges of the Mayor's Court as established by the act of 1832 and the subject of decision in *Gray vs. State.*

If in addition an examination be made of the general authorities, it will be found that there is nothing exceptional about the Municipal Court for the City of Wilmington. It is essentially like the municipal courts established generally throughout the whole United States.

Judge Dillon in Section 427 of his authoritative work on Municipal Corporations describes such courts as follows : " In this country it is usual to provide in a charter or organic act of a municipal corporation for a local or special tribunal, called by different names, such as the Mayor's Court, Recorder's Court, City Court and the like; and which is invested with jurisdiction over com-

plaints and prosecutions for the violation of the ordinances of the corporation, and often, for public convenience, with special civil and limited criminal jurisdiction under the laws of the State." And he adds: " It is competent for the Legislature to provide for the establishment of those inferior courts and to invest them with such measure of power and jurisdiction as may be deemed expedient, if no provision of the Constitution of the particular State be infringed." The case of *Gray vs. The State*, which we have analyzed, is cited in a note as holding a Mayor's Court to be an inferior Court within the meaning of the Constitution. This unquestionably is a point involved in the decision of that case, and under the caption, " it was understood to be the opinion of all the Court," it is stated in the report, *3 Harr.*, *88*, " that the Mayor's Court of the City of Wilmington, being the Court of a corporation, is necessarily an inferior Court."

I doubt if there is an incorporated town within the State of Delaware whose charter does not provide for a local court or tribunal, coming within the description given by Judge Dillon in the paragraph above quoted of the courts of municipal corporations. The Charter of the Town of Dover is perhaps typical in that respect. It provides that an officer called the alderman, elected by the Town Council, " shall have all the powers of a Justice of the Peace within the town, and shall have jurisdiction and cognizance of all breaches of the peace and other offenses of said town, so far as to arrest and hold to bail, or fine and imprison offenders, and also of all fines, forfeitures and penalties which may be prescribed by any law of this State or by any ordinance of the Town Council," etc., etc., etc. (*Sec. 2 Chap. 107, Del. Laws,* entitled, " An act to reincorporate the Town of Dover.")

The dual aspect of the jurisdiction of all these municipal courts—and they differ in this respect only in degree—is a feature of almost every important municipal agency.

As Dillon phrases it, " A municipal corporation proper is created mainly for the interest, advantage and convenience of the local-

ity and its people ; a county organization is created almost exclusively with a view to the policy of the State at large." (*1 Dillon on Munic. Corp., Sec. 23.*) But it is impossible for municipal agencies not to be agents of the State as well. With reference to the police, see the remarks of the Court in *Mayor, etc., vs. Vandegrift, 1 Marvel, 18.* Its agencies and officers, however, do not on that account cease to be corporate officers and corporation agents, and they cannot be considered to lose their character of officers of the corporation by reason of their exercise of powers and their performance of duties other than corporate. If such were the test to be applied to their officers, municipal corporations would be found to possess very few.

Further argument and illustration seem unnecessary. Reflection must show that it is inherent in the very nature of a municipal corporation that many of its functions should be dual in the manner described.

In view of all the considerations adduced we are brought to the conclusion that the word " officers " in the appointing clause of the Constitution of 1897 applies to State and county officers only, and not to the officers of a municipal corporation, and also that the City Judge of the Municipal Court for the City of Wilmington is an officer of a municipal corporation and therefore is not within the purview of that clause of the Constitution.

This brings us to the examination of Article 4 of the Constitution in order to ascertain the effect upon the question at issue of other provisions of the Constitution, inasmuch as no part of a Constitution or statute should be construed without considering it in connection with every other part.

Article 4, Section 1, on the judiciary provides that " The judicial power of the State shall be vested in a Supreme Court, a Superior Court, a Court of Chancery, an Orphans' Court, a Court of Oyer and Terminer, a Court of General Sessions, a Register's Court, Justices of Peace and such other courts as the General Assembly, with the concurrence of two-thirds of all the members elected to each House, shall from time to time establish."

In Section 33, it provides that the Registers of Wills of the several counties shall respectively hold the Register's Court of each county, and in Section 22 of Article 3, it provides, that the Registers of Wills shall be chosen by the qualified electors of the respective counties at general elections, and be commissioned by the Governor.

In Section 3 of the Judiciary Article, it provides that "The Chancellor, Chief Justice and Associate Judges shall be appointed by the Governor, by and with the consent of a majority of all the members elected to the Senate, for the term of twelve years; provided, however, that the Chancellor, Chief Justice and Associate Judges first to be appointed under this amended Constitution, shall be appointed by the Governor without the consent of the Senate, for the term of twelve years."

Section 32 provides that "Justices of the Peace and the Judges of such courts as the General Assembly may establish pursuant to the provisions of Section 1 or Section 30 of this Article shall be appointed by the Governor, by and with the consent of a majority of all the members elected to the Senate, for such terms as shall be fixed by this Constitution or by law."

Thus it appears that specific provision is made in detail for the appointment or election of every judicial officer mentioned or in any manner recognized by the Constitution, with but a single exception, and that exception is the class of inferior courts established by the General Assembly prior to the promulgation of the present Constitution, which courts are recognized in sections 1 and 30 of Article 4, as construed by this Court in the case of *Hartman and Forbes vs. the State,* cited above. In that case the Court say, Grubb, J., delivering the opinion of the Court, "Clearly the framers of said clause of Section 1 of Article 4 did not intend to employ it in any such restricted sense, nor design that thereby any such inferior courts and their aforesaid jurisdiction lawfully existing at the time the Constitution took effect should be abolished, or they would, as it is reasonable to presume

have made provision in the Schedule, or elsewhere in the Constitution, for the transfer of their pending proceedings, records, jurisdiction, etc., to some other appropriate judicial tribunial, as they did, as heretofore shown, in respect to the courts which they really designed to abolish.

" For it is obviously more reasonable to construe sections 1 and 30 of said Article 4, viewed in the light of Section 18 and other provisions of the Schedule, so as to regard Section 30 as a supplementary proviso to Section 1 to the extent of recognizing the continued existence of inferior statutory courts lawfully established before, and legally existing at the time the present Constitution took effect, and of also authorizing their exercise of such jurisdiction as by law then had been, or thereafter shall have been given to them by the General Assembly of the offenses enumerated in, or prescribed by the Legislature in accordance with said Section 30.

" Thus construed, said sections 1 and 30 may be held to mean that such jurisdiction may be exercised by inferior statutory courts lawfully established and existing either at or after the time said Constitution took effect."

Now the Municipal Court for the City of Wilmington, a city counting within its limits nearly half the population of the State, belongs to this class. In the face of the careful enumeration and specification of every other judicial tribunal, and of every class of judicial officers except the class to which the City Judge belongs, what is the inference to be drawn from this omission ? In order to answer the question, it is not necessary to enter into the consideration of the meaning and application of the maxim " *expressio unius exclusio alterius*," or the principle " that as exceptions strengthen the force of a general law, so enumeration weakens, as to things not enumerated."

The correct interpretation presents itself inevitably to the mind. It would be a serious reflection upon the intelligence or care of the Constitutional Convention that it is what is technically

called a "*casus omissus*," that the existence of the Municipal Court for the City of Wilmington was simply forgotten by the Convention.  If we should assume that to be the case, however, this Court could not supply the omission, for in the language of Buller, Judge, (*Jones vs. Smart, 1 Term Reports, 44*), cited by Mr. Sutherland, *Statutory Construction, Sec. 430*, "A *casus omissus* can in no case be supplied by a Court of law, for that would be to make the law."  Again, we have seen that the language of the general appointing clause cannot, under the construction put upon it by our own courts, independent of the general principles of statutory construction, be construed to apply to the Municipal Court for the City of Wilmington.  In view of the authorities we have already cited in our own State, the only rational conclusion to be drawn as to the intent of the Convention in an omission that seems inexplicable in any other view, is that it was the deliberate intent to leave the Municipal Court for the City of Wilmington just as it was under the statute creating it, without in any way amending or repealing the statutory provision of the organic act of the City which created the Court and provided for the appointment of the City Judge.  In this way it would remain subject to the power of the General Assembly to alter or abolish at its discretion by amending or repealing the statutory provision upon which its existence depended so long as such power is not exercised.

Accordingly it is considered by this Court that the appointment of the plaintiff to be City Judge of the Municipal Court for the City of Wilmington was a valid appointment without confirmation by the Senate; and it is therefore now considered and adjudged that the aforesaid judgment on demurrer of the said Superior Court be reversed with costs.

GRUBB, J., (concurring):

The record in this case discloses that on October 22, 1900, Edwin R. Cochran, Jr., Esq., having the qualifications prescribed by law, was appointed and commissioned by Governor Tunnell,

during the recess of the Senate, to be City Judge of the Municipal Court for the City of Wilmington, as created and established by the provisions of *Section 14, Chapter 207, Vol. 17, Laws of Delaware*, and duly entered upon the discharge of his duties as such Judge; that the State Senate, at its next session thereafter, having adjourned without day on March 8, 1901, and without having consented to, or confirmed his said appointment, Governor Hunn, who had succeeded Governor Tunnell, thereupon on March 9, 1901, appointed and commissioned Philip Q. Churchman, Esq., to be the said City Judge, and that subsequently on March 11, 1901, said Churchman ousted said Cochran from said office of City Judge, took and held possession of the same, and proceeded and still continues to discharge the duties thereof, and to enjoy the emoluments thereof exceeding five hundred dollars annually, etc.

An information in the nature of a writ of *quo warranto* having been filed in behalf of Cochran in the Court below, and judgment having been rendered therein in favor of Churchman, the cause is here on error.

The sole question presented for the determination of this Court is : Whether the consent of a majority of all the members elected to the Senate of the State of Delaware, to the said appointment of Edwin R. Cochran, Jr., Esq., to be the City Judge of the Municipal Court for the City of Wilmington, is, or not, required by law.

Said Chapter 207, Volume 17, p. 428, enacted April 13, 1883, which was the Revised Charter of the City of Wilmington, in Section 14 thereof, created and established the "Municipal Court for the City of Wilmington" and its "City Judge" and required his appointment by the Governor for a term of twelve years, but did not require confirmation thereof by the Senate.

Section 15 of said Charter gave said Court sole and exclusive jurisdiction of the criminal matters specified in Article 4, Section 15 of the late Constitution.

Section 18 of the Schedule to the present Constitution provides that "all the laws of this State existing at the time this

Constitution shall take effect, and not inconsistent with it, shall remain in force, except so far as they shall be altered by future laws."

The power of the Governor, in Section 14 of said Charter of 1883, to " appoint and commission said City Judge," without the consent of the Senate, was not repealed or altered by the adjourned Legislature of 1898 which met especially to conform the laws, etc., to the new Constitution (1897), nor has it since been repealed or altered by any General Assembly.

The question then is : Is there anything in the present Constitution which is so clearly and convincingly inconsistent, or in conflict with this statutory, absolute and uncontrolle ¹ power of the Governor to appoint and commission said City Jud ᵉe as to annul it or at least restrict it by senatorial confirmation ?

The affirmative of this question, if sustained, wou l effect very serious consequences.  It would not only deprive Co hran of his office to which he was appointed by the then lawful Executive, Governor Tunnell, but would also divest the Governor ɔf his said statutory, unrestricted discretionary power.  Moreover, it would deprive the Legislature itself of its discretionary powe ' to enact that the Governor might, without any senatorial confirm tion, appoint and commission such statutory judicial officer, a ld thus operate as a constitutional restriction upon a former le ⱬislative power.

Under such circumstances, the rule of constitutional in erpretation and construction is well settled, that the courts will r quire the inconsistency between the statute and the Constitution o be clear and cogent before they will intervene and cause such seïious consequences, and will not do so in case of doubt regarding such inconsistency.

The question before us is not whether Section 15, Article 6 of the late, or Section 30, Article 4 of the present Constitution, 1 )- lating to the establishment of, and the grant of the therein specifie l criminal jurisdiction to, any inferior Court established or to be established by the Legislature, applies to said City Court and

Judge now under consideration. That question, which in import-
ant respects differs from the present one, has been decided affirma-
tively by this Court in *Forbes and Hartman vs. State, 2 Pennewill,
197.*

Nor is the question whether said City Judge is a corporate or
State officer or agent, or both ; or charged with corporate or State
duties, or both, the necessarily decisive one in this instance.

The controlling question here is, whether or not Section 9,
Article 3 of the present Constitution, relating to the confirmation
by the Senate of " such officers as the Governor is or may be author-
ized by this Constitution, or by law to appoint," really applies, in
constitutional contemplation, to said City Judge of Wilmington.
In other words ; is said City Judge whose said court was lawfully
established and existing before and at the time the present Consti-
tution took effect—on June 10, 1897—*such an officer* as is required
*within the true intent and meaning* of said Constitution, to have his
lawful appointment by the Governor confirmed, or " consented to
by a majority of all the members elected to the Senate " ?

This intent and meaning must be sought in the language and
provisions of the Constitution itself, considered all together, and in
the sound interpretation and construction thereof according to the
well recognized and settled rules applicable thereto, and especially
as found in the authoritative adjudications in this State.

The provisions of the Judiciary Article—Article 4—of the
present Constitution expressly provide for the appointment by the
Governor and the confirmation by the Senate of every Judge or
judicial officer specifically created, or generally authorized by the
Constitution, except the Register of Wills and such statutory
judicial officers as were omitted from Section 32 of said Article 4
—particularly the Judge or Judges of such statutory court or courts
as was or were duly established and existing before and at the time
the present Constitution took effect.

The provisions of Section 22, Article 3, of said Constitution
provide expressly and specifically, by name, for the election of the

Register of Wills who is the constitutionally designated Judge of the Register's Court.

But no provision either of said Section 22, Article 3, or of any other section or article of the Constitution, expressly and specifically provides for either the appointment and confirmation, or the election of the said City Judge of Wilmington, or of any Judge of any other statutory Court that may have been (if any) duly established and existing before and on June 10, 1897.

Yet, notwithstanding this, the defendant in error contends that a constitutional intent that the confirmation of the appointment of said City Judge of Wilmington, whose Court was lawfully established and existing June 10, 1897, and whose office became vacant since the present Constitution took effect on said day, is to be found in certain provisions of Section 9, Article 3, thereof.

Said provisions are as follows :

" SECTION 9.   He shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint.   He shall have power to fill all vacancies that may happen during the recess of the Senate, in offices to which he may appoint, except in the offices of Chancellor, Chief Justice and Associate Judges, by granting commissions which shall expire at the end of the next session of the Senate."  *  *  *  " Unless herein otherwise provided, confirmation by the Senate of officers appointed by the Governor shall be required only where the salary, fees and emoluments of office shall exceed the sum of five hundred dollars annually."

But as this language is entirely general and does not sepcifically refer to *judicial* officers as the respective sections of said Judiciary Article 4 do, and as said City Judge is a *charter* officer and clothed with powers and duties regarding violations of corporate ordinances as well as of State laws, and as his said Court was law-

fully established and existing before and on June 10, 1897, said general language of Section 9, Article 3, is clearly inapplicable to said City Judge of Wilmington, for reasons and upon grounds which seem to be sound and tenable.

A decisive reason for this view appears to be that the respective sections of said Article 4 having specifically provided for the appointment and confirmation of every kind of judicial officer named and created by the Constitution, or authorized by it to be created, except such statutory judicial officers as have been omitted from Section 32, and also the Register of Wills who by said Section 22 of Article 3 is expressly made an elective officer, it must be presumed that the framers of said Constitution, in omitting the said City Judge of Wilmington, and his like, from the class of statutory courts expressly mentioned in Section 32, Article 4, purposely intended, for reasons deemed by them wise and sufficient, as we must presume, that confirmation by the Senate should not apply to him or to any Judge of such other statutory courts as were lawfully established and existing (if any) when said Constitution took effect. For it seems unreasonable to suppose that, whilst said framers were specifically providing in the appropriate sections of said Judiciary Article itself for the confirmation by the Senate of each kind or class of judge or judicial officer except said Register of Wills, (concerning whom they specifically made adequate provision in said Section 22, Article 3), and particularly of the statutory class of judicial officers embraced in said Section 32, they would have intentionally left the confirmation of said City Judge, and any other such statutory judge, to the general unspecific clause of a different and distinct Section and Article, such as said Section 9 and Article 3 are.

Said Section 32 is as follows:

"SECTION 32.   Justices of the Peace and the Judges of such Courts as the General Assembly may establish pursuant to the provisions of Section 1 or Section 30 of this Article shall be ap-

pointed by the Governor, by and with the consent of a majority of all the members elected to the Senate, for such terms as shall be fixed by this Constitution or by law."

If the general language of Section 9, Article 3, respecting said confirmation could properly be construed to include said City Judge who is entirely omitted from said Section 32, Article 4, owing to its exclusively *future* application, as this Court held in *Forbes and Hartman vs. State, 2 Pennewill, 207*, then the thereafter created statutory judicial officers specifically referred to in said Section, whould have been equally included by said Section 9, Article 3, if they also had been omitted from said Section 32, Article 4; and consequently said Section 32, so far as respects confirmation by the Senate of such futurely created judicial officers, would be a needless and superfluous provision on the part of the Convention which incorporated it in Article 4 of the Constitution. The more natural and reasonable inference manifestly is that the framers of the Constitution intended that confirmation by the Senate of State *Judges* and other *judicial* officers should only be required as prescribed exclusively by the express provisions of the respective sections of the said Judiciary Article. Therefore, whilst confirmation by the Senate applies to the Judges of all the constitutional and statutory courts actually embraced within sections 3 and 32 of said Article 4, yet it cannot apply to the confirmation of the Judges of any such courts as are not embraced therein.

The general language of said Section 9, Article 3, cannot properly be held to enlarge the specific language or scope of the subsequent Section 32, Article 4, for the former, being general, must be limited by the latter.

Further constitutional evidence in support of the view that confirmation by the Senate was not intended to apply to said City Judge of Wilmington, or to the Judge of any other such statutory inferior court already established at the time the present Constitution took effect, is found in the fact that there is omitted from said Section 32, Article 4, the word "established" which immediately

precedes the words "or to be established" in Section 30 of Article 4, and which word was not in the corresponding Section 15 of Article 6 of the late Constitution, but was carefully added in said Section 30 of the Judiciary Article of the present Constitution.

This significant addition in said Section 30, to the words "to be established" as contained in said Section 15, Article 6 of the late Constitution, viewed in connection with the provisions of Section 18 of the Schedule of the present one, furnished, as this Court held in *Forbes and Hartman vs. State, 2 Pennewill, 202,* convincing evidence of a constitutional design to embrace within its provisions, and continue the existence of the said Municipal Court of Wilmington and its said Judge, and also any other such statutory inferior court and Judge already established and existing (if any) when the present Constitution took effect. If this be so, then the convention which framed said Section 30, Article 4, must necessarily have been cognizant of the *continuance* of such already established Municipal Court, and therefore must, presumably, have had in mind, and consequently have deliberately and intentionally omitted to insert in said Section 32 of said Article 4 the words "have already established or"—or their equivalent—when it merely inserted therein the words; "may establish" only, thereby — as was declared by this Court in said *Forbes and Hartman vs. State, 2 Pennewill, 204*—" giving the last named Section 32 a prospective application solely and confining its operation to statutory courts established after the present Constitution took effect."

This deliberate omission is unquestionably further convincing evidence of a plain constitutional intent that confirmation by the Senate of the Judge of any such pre-existing court as the said Municipal Court of Wilmington, shall not be required, and that the preceding general language of Section 9, Article 3, respecting confirmation by the Senate, shall not apply to said City Judge, or to any such *judicial* officer.

In combatting the foregoing view, the insufficient explanation has been suggested in behalf of the defendant below, that said

Section 32, Article 4, providing that all Justices of the Peace and Judges of such statutory courts as shall in *future* be established pursuant to Section 1 or Section 30 of said Article 4, shall be appointed by the Governor and confirmed by the Senate, was incorporated in the Constitution owing to the importance of said officers and because of the alleged fact that many of said Justices of the Peace and statutory judicial officers do not, or would not receive $500 annually from salary, fees, etc., and hence would, otherwise, be exempted from confirmation by the salary, etc., clause of Section 9, Article 3, relating to that subject.

Yet if such were the fact and reason, it would be more reasonable to presume that such Justices and judicial officers would have been more directly and explicitly excepted from the operation of said salary clause of Section 9, Article 3, by appropriately adding thereto the requisite proviso for such purpose. But as such alleged fact does not appear in the record before this Court, it is a mere conjecture and assumption of both the motive of the Constitutional Convention and the supposed fact upon which their said action is imagined to have been founded. It is not within the province or duty of this Court, in the absence of any evidence or constitutional provision warranting it, either to conjecture or question the grounds upon which constitutional conventions or legislatures, exercise their own rightful power and discretion.

In the present instance it is a plain and positive fact that the convention carefully (and not undesignedly) employed in said Section 32, Article 4, language which applies only to Justices of the Peace, and to Judges of said statutory courts *futurely* established, and studiously and deliberately discarded the aforementioned words of said Section 30, Article 4, or their equivalent, which would, if used, have embraced the Judges of such courts then already established, including said City Judge of Wilmington.

The foregoing inference, therefore, that the framers of the present Constitution intended absolutely to exclude such pre-established City Judge, or Judges (if any), from the class of officers

whose confirmation was really required by the Constitution, and for reasons deemed proper and sufficient in the judgment and discretion of the Convention, as we must presume, whatsoever they were, is much more certain and reasonable and much less conjectural and unwarrantable than that suggested as aforesaid in behalf of the defendant below. In the absence of any actual evidence of the Convention's real reason, a far more reasonable ground than that conjectured as aforesaid, would be that they acted in this respect under the belief that the mode of selecting Municipal Judges and other corporate officers should be left to the wisdom and discretion of the Legislature exclusively, and not be restrained or hampered by permanent constitutional restrictions. And this inference seems to be strengthened by the provision of Section 1, Article 9 of the present Constitution, expressly reserving to the Legislature the creation and general control of municipal corporations in this State.

Here the determination of the cause before us in favor of the plaintiff in error might well rest.

But there is a further ground urged in behalf of the plaintiff in error to show that said general and unspecific language of Section 9, Article 3, relating to confirmation by the Senate, is inapplicable to the appointment of said City Judge of Wilmington. And that is, that said general and unspecific language cannot, in view of the general purport and purpose of the present Constitution, and according to well settled rules of interpretation and construction—especially in this State—of itself, without some plainer evidence of such constitutional design, properly be held by this Court to refer or apply, in constitutional contemplation and meaning, to such an officer as said City Judge who is a municipal corporate officer or servant clothed and charged with purely corporate as well as with certain minor State powers and duties.

Undoubtedly the general principle upon which this contention in behalf of the plaintiff in error is based, has long been uniformly recognized and directly adjudicated by the Courts of Delaware.

*Gray vs. State, 2 Harr., 76; State vs. Wilmington City Council, 3 Harr., 294; Coyle vs. McIntyre, 7 Houst., 44; Forbes and Hartman vs. State, 2 Pennewill, 197.*

Therefore, as fully one-half of the Constitutional Convention were lawyers—some of them the foremost members of the Delaware Bar—it seems reasonable to infer that the Convention framed the present Constitution and the said language of Section 9, Article 3, in view of and subject to this general principle.

In *State vs. Wilmington City Council, 3 Harr, 294,* the question was whether the general language of Section 8, Article 7 of the late Constitution disqualified John Hagany, an ordained clergyman then continuing in the excersise of his clerical functions, to hold the office of City Treasurer of Wilmington.

The pertinent provision of said Section 8, Article 7 was as follows : "No ordained clergyman or ordained preacher of the gospel of any denomination, shall be capable of holding any civil office in this State, or of being a member of either branch of the Legislature, while he continues in the exercise of the pastoral or clerical functions."

Although it was conceded that the natural import of said language was broad enough ordinarily to include a municipal corporate officer, yet it was held by the Court that said general language did not, within the true intent and meaning of the Constitution, embrace and apply to such an officer. In this instance the said City Treasurer was a purely corporate officer and was not charged with any strictly State duty.

In *Forbes and Hartman vs. State, 2 Pennewill, 197,* the following language of Section 9 of the Schedule of the present Constitution, " All the Courts of Justice now existing shall "—on June 10, 1897—" be abolished, and the offices of the said Chancellor and Judges shall expire," was held by this Court not to apply to the said City Judge of Wilmington.

In *Coyle vs. McIntyre, 7 Houst., 44,* the questions directly raised, and therefore necessarily adjudicated, were whether the

Board of Water Commissioners for the City of Wilmington, who had been named and appointed by the Legislature, must either have been appointed by the Governor under the following provision of Section 8, Article 3 of the late Constitution, viz., "He shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for;" or have been elected or otherwise selected by the municipality under the following provision of Section 8, Article 7 of said Constitution, viz., "The rights, privileges, immunities and estates of religious societies and corporate bodies shall remain as if the Constitution of this State had not been altered,"—which latter provision it was contended saved to said City the right to have its corporate agents so elected or selected.

In this case the late Court of Errors and Appeals determined that, in constitutional contemplation, neither of said general constitutional provisions thus applied to the said Board of Water Commissioners.

*7 Houst., 80 to 82, 92, 98, 99.*

In *Gray vs. State, 2 Harr., 76*, the questions were also directly raised, and therefore unavoidably and necessarily adjudicated, whether the mayor as a Judge of the Mayor's Court for Wilmington—who was elected by the Council of said City pursuant to its Charter granted January 18, 1832, and under the late Constitution of 1831 which the Court was then construing—must either have been appointed by the Governor under said Section 8, Article 3 of said Constitution, or have been elected by the municipality under said saving clause of Section 8, Article 7 thereof. The Court held in that case, without announcing any opinion or grounds therefor, that said Mayor's Court was lawfully constituted and vested with the criminal jurisdiction specified in Section 15, Article 6 of the late Constitution.

To correctly so hold, the Court must necessarily have determined that said general language of said two constitutional pro-

visions just quoted did not, according to the true intent and mean-
ing of the Constitution, thus apply to such Judge of said Mayor's
Court; as was similarly determined by the late Court of Errors
and Appeals in *Coyle vs. McIntyre* in respect to said Board of
Water Commissioners, as already stated. It is true that Judge
Harrington, who was then the Judicial Reporter for the State, in
his published individual opinion, erroneously asserted the contrary
as to said saving clause respecting corporations, at least, but he ex-
pressly states in his report of said case, *2 Harr., 87,* that the
majority of the Court, including Chief Justice Thomas Clayton,
delivered no opinion, and he refrains from stating that they actually
concurred in his untenable view.

The case of *Gray vs. State* is virtually identical, in both the
questions and facts in controversy, with that now before us, except
that in the latter the Judge was appointed by the Governor, and in
the former was selected by the City Council of Wilmington.   For,
in principle, there can be no material difference between a question
of " appointment " and one of " confirmation " so far as respects
the applicability of a constitutional *general* clause regarding either,
to a corporate officer.   In said Gray case the Court—that is, the
majority—certainly determined that the mayor as Judge of the
Mayor's Court, although then vested and charged by the Legislature
with the same powers and duties respecting criminal offenses under
State laws, as the said City Judge now is, was nevertheless not sub-
ject to the said two above-mentioned general provisions, in respect
to either his appointment by the Governor or his election by the
citizens of the municipality.

If this be so, and there being no substantial difference, in the
application of said principle, between appointment and confirma-
tion, then why shall not said principle of constitutional construction
materially aid in the determination of the present controversy re-
specting said City Judge?

The only notable difference between said Gray case and the
present one is that in the latter the Judge was appointed by the

Governor, whilst in the former he was elected by the municipality of Wilmington through its council.

But in *State vs. Dallas, 3 Yeates, 300,* the Recorder or Judge of the City Court of Philadelphia, was appointed by the Governor, and was held to be a Judge of a court of record and empowered to try and determine criminal offenses against the laws and peace of the State of Pennsylvania. He at the same time was the United States District Attorney for the Eastern District of Pennsylvania. Notwithstanding this, the Supreme Court of said State held that he was not such a Judge as was contemplated by the Constitution of Pennsylvania in the following prohibition: "No person holding or exercising any office of trust or profit under the United States, shall, at the same time, hold or exercise the office of *Judge,* Secretary, Treasurer, Prothonotary, Register of Wills, Recorder of Deeds, Sheriff, or any office in this State to which a salary is by law annexed."

In so deciding, said Court plainly appears to have considered that said constitutional provision did not take notice of, or apply to such a municipal Judge or other corporate officer. For Chief Justice Shippen, delivering the unanimous opinion of the Court, in the course of said opinion also declared that the words "Secretary" and "Treasurer" as used in said prohibition, applied exclusively to the Secretary and the Treasurer of the *State,* and could not be held to mean the Secretary or Treasurer of any *corporate* body within the State. It is to be observed also that said prohibition included the words "or any office in this State to which a salary is by law annexed;" and further that said Section 9, Article 3 of our present State Constitution, now in question, contains, in respect to confirmation by the Senate, these words: "Such officers as he" (the Governor) "is or may be authorized by this Constitution or by law to appoint," and also "unless herein otherwise provided, confirmation by the Senate of officers appointed by the Governor shall be required only where the salary, fees and emoluments shall exceed the sum of five hundred dollars annually."

Said last clause of Section 9, respecting salary, etc., is not a grant or enlargement of the power of confirmation by the Senate, but is merely a limitation of that power as recognized or granted in the prior provisions of said section; and, further, it only relates to such officers merely as the said power is really applicable to.

The provisions of said clause of the Pennsylvania Constitution are more broad and comprehensive, as well as more specific, than said provisions of Section 9, Article 3 of the Delaware Constitution, and yet the Court in *State vs. Dallas, 3 Yeates. 300*, held not only that said provisions did not apply to the Recorder or City Judge of Philadelphia, but also that, in the opinion of the Court, they did not apply, in constitutional contemplation and intent, to the Secretary or Treasurer of any corporation within the State— that is, to a corporate officer.

In the Dallas case the fact that said Recorder or City Judge had been appointed by the Governor, instead of elected or otherwise chosen by the municipality, did not seem to affect the decision in any material respect.

In the determination of the case now before us the question then arises: May merely the *mode* of appointment make such an officer as the City Judge of Wilmington a State instead of a corporate officer? If so, then must not the Board of Water Commissioners, in question in *Coyle vs, McIntyre, 7 Houst., 44*, notwithstanding the contrary decision therein, be declared State instead of corporate officers or agents, for they were expressly named, appointed and empowered by the act of the General Assembly itself; as well as other officers within said municipality who have occasionally been appointed by the Legislature, the Governor or the Judiciary?

Surely the general public nature of the powers and duties discharged under State laws would more reasonably than such mode of appointment merely, impress a public or State character upon a corporate officer designated, empowered and required by a charter provision or any other Legislative enactment, to perform such

duties of a general public, and not strictly corporate description. And yet, in view of the decision in *Gray vs. State, 2 Harr.*, *93*, it was there necessarily held, as heretofore shown, that the Judge of said Mayor's Court, although invested and charged with such public powers and duties, was still a corporation and not a State officer. And this view of the Court in *Gray vs. State* was concurred in by so able and eminent a lawyer as Hon. James A. Bayard, in the course of his argument in *State vs. Wilmington City Council, 3 Harr.*, *297*, although said case of *Gray vs. State* was cited against his cause at the hearing thereof.

Much was said at the argument here, in reference to the present City Judge being a *public*, in the sense of a *State* officer, and therefore subject to confirmation, under Section 9, Article 3 of the Constitution. As has already been explained, the fact of his being even a State statutory judicial officer would not necessarily make him subject to confirmation by the Senate if he was really exempted therefrom by a proper construction of the express provisions of the Constitution, or the clear and reasonable implications thereof, as it already has been shown that he was.

But does the fact of a municipal corporate officer being clothed and charged with powers and duties of a public, and not merely corporate nature, under the provisions of a charter or of a special or general State law, make him the less a corporate officer?

The theory and ground upon which every municipal corporation is created is that it is an instrumentality or agency of the State to aid the State in the civil government of that portion of its territory embraced within the prescribed corporate limits. All municipal corporations are emanations of the supreme law-making power of the State and created exclusively for the public advantage. (*Coyle vs. McIntyre, 7 Houst.*, *89, 96*). Therefore, in legal contemplation, every such corporation is a *public* instrumentality or agency created and empowered solely for public purposes and charged with duties in behalf of the State to which it owes its being, and, consequently, as it can act only through its officers,

agents and servants, all these are, logically speaking, public or State agencies. And yet they have uniformly been regarded in this State as officers and servants of such municipal corporations, and also elsewhere unless there were special constitutional or statutory provisions, or reasons of State polity or policy to the contrary.

In *Wilmington vs. Vandegrift*, the late Court of Errors and Appeals, whilst it held that the City was not liable for the failure of its city police to discharge a State duty respecting a nusiance within its public streets, yet did so on the ground that these " servants of the municipality," as the Court termed them, had failed to discharge a public, not a mere corporate duty. In delivering its opinion the Court also described the present Municipal Court in Wilmington as a " public instrumentality " in respect to its specified criminal jurisdiction under Section 15 Article 6 of the late Constitution ; but said Court nowhere declared that it was not a constitutent part of the said corporation, nor that its Judge was not a corporate officer. (*1 Marvel, 18*).

Further review of the respective contentions in this cause seems needless. Having carefully examined and compared the respective provisions of the Constitution relating to the confirmation of such officers as may be appointed by the Governor, and having maturely considered said provisions in the light of the authoritatively established principles and rules of interpretation and construction, I fail to discover any constitutional provision or plain and reasonable implication thereof which warrants this Court in holding that said Section 9, Article 3, or any other provision of the Constitution requires that the Senate shall confirm or consent to any appointment of said City Judge of Wilmington which the Governor may be authorized to make.

In favor of such contention is only the general language of said Section 9, which provides that the Governor shall have power to appoint, subject to confirmation by the Senate, " such officers as he is or may be authorized by this Constitution or by law to appoint."

Against it are the long continued and uniform adjudications of the courts of this State, that equally broad and comprehensive constitutional provisions, unaided by other provisions or implications, are not, in the constitutional meaning and intent, applicable to the officers of a municipal corporation. Also against such contention are the express and specific provisions and plain implications of Article 4, and especially of said Section 32 thereof which clearly excludes from confirmation by the Senate the said City Judge of Wilmington, as heretofore explained.

So that, whatsoever may have been the evils to be remedied by, and the general purpose of the adoption of the confirmation provisions of said Section 9, Article 3 of the Constitution, it seems certain that its framers clearly intended that the said City Judge of Wilmington, and his like, should be excepted therefrom and should not be subject thereto. I therefore consider that the provisions of the Constitution, properly interpreted and construed, warrant the conclusion that such confirmation of said City Judge is not within the meaning and contemplation of that instrument, and that, consequently, the judgment of the Court below should be reversed.

SPRUANCE, J., (dissenting):

The question of law for our determination in this case is, whether the appointment by the Governor of a Judge of " The Municipal Court for the City of Wilmington " is, without confirmation by the Senate, valid for a longer time than the end of the next session of the Senate.

The said Court was established by an act of the General Assembly passed April 13th, 1883, being *Chapter 207 of 17 Laws of Delaware.*

The said Court was so established pursuant to the provisions of Section 1 and Section 15 of Article 6 of the Constitution of 1831, and is an inferior Court within the meaning of the said provisions.

*Wilmington vs. Vandegrift, 1 Marvel, 13,* and *Forbes vs. State, 2 Pennewill, 197.*

If there be any existing provision of the said act establishing the said Municipal Court inconsistent with the present Constitution, whether the same relates to the appointment of the Judge of the said Court, to its jurisdiction, or to any other matter, such inconsistent provision must yield to the paramount authority of the present Constitution; but if there be no such inconsistent provision the said act remains in force, except so far as it has been altered by the General Assembly.—(*Schedule, Section 18.*)

By Section 14 of the said act it is made the duty of the Governor to appoint and commission the Judge of said Court, but neither by said act, nor by any other act, nor by the Constitution of 1831, is confirmation by the Senate required. If such confimation is now necessary it must be by reason of something contained in the present Constitution.

Section 32 of Article 4 of the present Constitution provides that "Justices of the Peace and the Judges of such courts as the General Assembly may establish pursuant to the provisions of Section 1 or Section 30 of this Article shall be appointed by the Governor, by and with the consent of a majority of all the members elected to the Senate," etc., but the said Municipal Court was not established pursuant to the provisions of said Section 1 or Section 30 of Article 4 of the present Constitution but pursuant to the provisions of Section 1 and Section 15 of Article 6 of the Constitution of 1831.

While these sections of the two Constitutions are similar, they are not the same, and it would be an unwarrantable construction of the plain words of said Section 32, limited as they are to Judges of courts which may be established pursuant to the provisions of said Section 1 or Section 30, to extend them to include the Judge of a court established long before the present Constitution was made.

In ascertaining the meaning of a remedial provision of a Con-

stitution or statute, where the language is not clear, it is often necessary to consider the mischiefs intended to be prevented.

Under the Constitution of 1831, the Governor had very extensive powers of appointment, without being subject to the approval or control of any other department of the Government. For a long time this had been considered by many to be a dangerous power to be placed in the hands of any one man, and it is evident that the last Constitutional Convention shared in this opinion.

The proceedings of the Convention and the Constitution framed by it unmistakably disclose a purpose to diminish and restrict the powers of appointment to office theretofore exercised by the Governor.

If this be the general policy shown by the Constitution, whether we approve or disapprove of it, it should have great weight with us in construing the general provisions relating to appointments by the Governor.

To remedy the supposed evil, the new Constitution provided that many offices before filled by executive appointment, should be elective, and that all appointments which the Governor was or should be authorized to make, should, with a single exception, be subject to confirmation by the Senate.

For the same purpose—the curtailment of the appointing power of the Governor—the provision of the Constitution of 1831, that the Governor " shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for " (*Section 8 of Article 3*), was omitted from the Constitution of 1897, and in lieu thereof was substituted the provision that the Governor " shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint."—(*Section 9 of Article 3*.)

This change not merely imposed upon the Governor's ap-

pointing power the necessity of confirmation by the Senate, but also diminished the number of offices to which he might appoint.

By the old Constitution he had power to appoint to all offices established by the Constitution, or by law, where the Constitution did not otherwise provide; but under the new Constitution his power of appointment is limited to such offices as he is or may be authorized by the Constitution or by law to appoint.

While the present Constitution makes specific provision for the appointment by the Governor, with the consent of the Senate, of certain other officers besides those mentioned in said Section 32 of Article 4, viz. : Section 10 of Article 3 as to the Secretary of State, Section 3 of Article 4 as to the Chancellor, Chief Justice and Associate Judges, and Section 3 of Article 11 as to the Commissioners of Agriculture, no attempt is made to enumerate all of the appointments by the Governor requiring confirmation by the Senate, as this would have led to needless prolixity, and might have resulted in the omission of some of them.

Hence the necessity of a general provision, sufficiently broad to comprehend all cases not specifically provided for. Section 9 of Article 3 makes such general provision as follows:

" He" (the Governor) "shall have power, unless herein otherwise provided, to appoint, by and with the consent of a majority of all the members elected to the Senate, such officers as he is or may be authorized by this Constitution or by law to appoint. He shall have power to fill all vacancies that may happen during the recess of the Senate, in offices to which he may appoint, except in the offices of Chancellor, Chief Justice and Associate Judges, by granting commissions which shall expire at the end of the next session of the Senate." * * * " Unless herein otherwise provided, confirmation by the Senate of officers appointed by the Governor shall be required only where the salary, fees and emoluments of office shall exceed the sum of $500 annually."

The only express exception to the above requirement of confirmation of officers appointed by the Governor, is of officers whose

salary, fees and emoluments of office do not exceed the sum of $500 annually. .

As the salary of the Judge of the said Municipal Court is fixed by statute, at the sum of $1500 annually, he is not within said exception.

The question remains whether he is within the general provision of said section requiring confirmation by the Senate.

While, as we have seen, the Municipal Court of the City of Wilmington is an inferior Court established pursuant to the provisions of Section 1 and Section 15 of Article 6 of the Constitution of 1831, it is of the same general character as if it had been established pursuant to the provisions of Section 1 and Section 30 of Article 4 of the Constitution of 1897.

If said Court had been established under the said provisions of the Constitution of 1897, confirmation of the appointment of its Judge would have been necessary under the express terms of Section 32 of Article 4 of said Constitution, but there can be no possible reason why confirmation by the Senate was not equally expedient in case of the appointment of a Judge of an inferior court of like character established under the said provisions of the Constitution of 1831.

Why, then, was not the express requirement of confirmation by the Senate made applicable by said Section 32 of Article 4 to the Judges of inferior courts which had been established before that time?

It could not have been because the convention was ignorant of the existence of any court of that character, because in the provision of Section 30 of Article 4 authorizing the General Assembly to give "to any inferior court by it established, or to be established," jurisdiction of the criminal matters therein specified, we have a distinct recognition of the fact that one or more of such inferior courts then existed.

*Forbes vs. State, 2 Pennewill, 202.*

It is not to be presumed that the Convention entertained the

inconsistent purpose of requiring confirmation of the Judges of all inferior courts thereafter to be established, and of dispensing with it in case of the judges of all inferior courts of like character theretofore established.

It may be that the convention did not deem the appointment and confirmation of the Judge or Judges of the single or very few then existing inferior courts a matter of such dignity and importance as to warrant a special provision ; or it may be that the failure to make such special provision was a *casus omissus*, but in either case, or in any case, the general provisions of Section 9 of Article 3 are broad enough, and were obviously intended to cover this and all similar cases not covered by the special provisions relating to the appointment and confirmation of certain named officers.

While the Constitution makes specific provision as to the appointment and confirmation of certain officers, in the strictest sense of the term State officers, it also by said Section 32 of Article 4, makes like specific provision as to certain officers, claimed not to be State officers.

There can be no doubt that the words, " unless herein otherwise provided " in said Section 9 of Article 3 refer equally to both of these classes of officers, and thus is shown the intention to apply the general provisions of said Section 9 to both of said classes of officers.

If, as has been shown, said Section 32 of Article 4 has no application to a Judge of the said Municipal Court, the maxim *expressio unius est exclusio alterius* cannot be interposed as an objection to the application of said Section 9 of Article 3 to such a Judge.

While the foregoing considerations, are in my judgment, conclusive as to the necessity of confirmation by the Senate in the present case, I am convinced that, in order to fully carry out the intention of the Convention, a much broader interpretation must be given to said Section 9 of Article 3.

Of course the word " officers " as used in said Section can be

applied only to public officers, but in my opinion, it is not material whether the powers or duties of such officers extend to the whole State, or be limited to a part of it, such as a county, hundred, district, town, city or other territorial division, made or recognized by the State Constitution or law for governmental purposes.

Saving cases where the salary, etc., does not exceed $500 annually, and other cases where the Constitution otherwise provides, the only designation, definition or qualification in said section of the "officers" requiring confirmation, is that they be " such officers as he" (the Governor) "is or may be authorized by this Constitution or by law to appoint."

Subject to said exceptions, *this* is the sole test, and it is sufficient. To impose any other would be to defeat or impair the general purpose and policy of the Constitution, and qualify and control the proper meaning and application of the language of said Section 9.

To limit the application of the word " officers " in said section to State officers, in the strict sense of the term, would be to guard against only a part of the mischief intended to be prevented.

The history of legislation in this and other States shows many instances of acts conferring upon the Governor the power to appoint important officers theretofore otherwise chosen, and in no way connected with the general government of the State, and also to appoint commissions to take the place and exercise the functions of purely municipal or other local officers.

Surely it was the purpose of said section to subject such powers of appointment to the wholesome restraint of confirmation by the Senate.

In support of the contention that a Judge of the said Municipal Court is not within the meaning of the word " officers " as used in said Section 9 of Article 3, great reliance was placed upon *State vs. Dallas, Gray vs. State* and *State vs. Wilmington.*

The first of these cases, *State vs. Dallas, 3 Yeates, 300 (1801)*, arose upon the construction and application of a provision of the

Constitution of Pennsylvania, that "No member of Congress from this State, nor any person holding or exercising any office of trust or profit under the United States, shall, at the same time, hold or exercise the office of Judge, Secretary, Treasurer, Prothonotary, Register of Wills, Recorder of Deeds, Sheriff, or any office in this State, to which a salary is by law annexed." Mr. Dallas, the defendant, held and exercised an office of trust and profit under the United States, and also the office of Recorder of the City of Philadelphia, and the question was, whether the latter office was within the said prohibition.

The Court held that in a strict legal sense of the word, the said Recorder was a Judge, but not such a Judge as the Constitution meant to prohibit from holding an office of trust or profit under the United States.

This conclusion was reached, not through any interpretation given to the words, "or any office in this State," etc., but by reason of the restriction placed by the Court upon the word "Judge."

The Court held that the word "Judge" as used in said clause, did not include every judicial character in the State; that it included neither the Recorder of Philadelphia, (the Judge of a City Court) nor Justices of the Peace, nor Judges of the Courts of Quarter Sessions of the several counties, (both of the latter being parts of the judicial power of the State), but was applicable only to Judges of a particular class, viz: To the Judges of the Superior Court, the Judges of the Courts of Common Pleas and the Judges of the Court of Errors and Appeals.

It will be seen that the said Recorder was not excluded from the operation of said prohibition because he was a municipal officer, but because like the Judges of the courts of Quarter Sessions, he was not of the same class as the Judges of the higher Courts of the State.

In *Gray vs. State, 2 Harr.,* 76, (*1836*) the Court merely decided that the Mayor's Court for the City of Wilmington, as then constituted, had jurisdiction to try the offense of assault and

battery. This decision of course implied that the said court was an inferior court within the meaning of the Constitution of 1831, and also that the officers composing said court, viz., the Mayor, Alderman and President of the City Council, or any two of them (none of whom were appointed by the Governor) were not within the provision of said Constitution, that the Governor " shall appoint all officers whose offices are established by this Constitution, or shall be established by law, and whose appointments are not herein otherwise provided for."

But the Court delivered no opinion whatsoever. The opinion printed in the report of the case was never pronounced, and a majority of the Court did not think it necessary to express their opinions at large on some of the points raised in the argument. The said opinion therefore must be regarded merely as an expression of the views of the Judge whose name it bears, and not as the opinion of the Court.

In *State vs. Wilmington, 3 Harr., 294 (1840)*, it was held that the office of City Treasurer of Wilmington (elective by popular vote under the provisions of the City Charter) was not " a civil office in this State" within the meaning of Section 8 of Article 7 of the Constitution of 1831, excluding ordained clergymen, etc., from holding " any civil office in this State."

Chief Justice Bayard, in delivering the opinion of the Court held that this provision " was meant to establish the great political principle of the Separation of Church and State," and that the words, " civil office in this State," should be construed to mean civil office in the frame of government, or political organization which it was the business of the Convention to establish, and which they did establish, and that said words were applicable only to State officers. These cases were not in the highest State courts, and in our present inquiry they afford us but little aid, as the constitutional provisions construed, and the facts to which they were applied, differ materially from those now under consideration.

The relations between the State and its municipal governments

are now better understood in this State than when those decisions were made.

We no longer talk of municipal rights made secure by pre-scriptions or charter against legislative or constitutional inter-ference.

Since *Coyle vs. McIntyre, 7 Houst., 44 (1884),* it has been understood to be settled in this State, that municipal corporations are State agencies for local government, and that notwithstanding the constitutional reservation of the rights, privileges, etc., of cor-porate bodies, the Legislature has the power, at any time, without their consent to alter, amend or abolish their charters.

If the Legislature deems any of the offices of a municipal corporation of sufficient importance to be made appointive by the Governor, it may so provide, but, in my opinion, such appoint-ments thereupon become subject to the provisions of said Section 9.

The limitation of the requirement of confirmation to offices where the salary, etc., exceeds $500 annually, will generally ex-clude from confirmation offices of a trivial character.

For the reasons above stated, I am of the opinion that the appointment by the Governor of Edwin R. Cochran, Jr., to the office of Judge of the said Municipal Court, not having been con-firmed by the Senate, expired at the end of the session of the Senate next thereafter, and that the judgment of the Court below should be affirmed.